**MIDDLE ATLANTIC UTILITIES CO.,**
**Plaintiff-Appellant,**

v.

**S. M. W. DEVELOPMENT CORP.,**
**Defendant-Appellee.**

**No. 291, Docket 31821.**

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1968.

Decided April 2, 1968.

382

Daniel Diamond, New York City (Lindemann & Diamond, Stephen W. Lindemann, New York City, of counsel), for plaintiff-appellant.

David Schwartz, New York City (Stroock & Stroock & Lavan, Robert D. Steefel, and Arnold I. Rich, New York City, on the brief), for defendant-appellee.

Before MEDINA, MOORE and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff Middle Atlantic Utilities Co., a Delaware corporation, is the assignee of the claim of Rock Hill Sewerage Disposal Corporation (hereinafter Rock Hill), a New York corporation. Defendant is the S. M. W. Development Corp. (hereinafter S. M. W.), a New York corporation. Jurisdiction is based on the diversity of citizenship. 28 U.S.C. § 1332 (1964).

I.

On October 19, 1960, Rock Hill applied to the Town of Thompson, Sullivan County, New York, for permission to form a private sewerage corporation for the sewer district known as the Lake Louise Marie Development. On October 22, 1960, the Town Board consented to the formation of the private corporation; it also granted Rock Hill permission to charge $60.00 for each "building plot." Both assents, however, had to be consistent with Chapter 1067 of the 1960 Laws of New York.

About one year later, on March 23, 1961, Rock Hill and S. M. W., the owner of unimproved land within the sewer district, entered into an agreement. Although subject to various interpretations, the agreement included provisions relating to the exclusive use of the sewerage facilities, the net operating losses of Rock Hill, the management of Rock Hill's plant and services, the waiver of the $60.-00 per "building plot" service charge, and the further development of the sewer facilities.

On May 28, 1964, plaintiff filed a complaint in the district court. It alleged the Town Board had resolved that Rock Hill could charge $60.00 for each "building plot"; that S. M. W. owned a number of plots in the sewer district; that to date S. M. W. had made no payments; and that S. M. W. owed plaintiff the arrears. In a second and third cause of action, similar claims were made against Sullivan County Land & Development Corporation and J. Ballay & Co., Inc. On August 31, 1964, plaintiff amended the complaint to delete the cause of action against Sullivan County Land & Development Corporation.

Both S. M. W. and plaintiff moved for summary judgment. The issue before the court was whether the annual rate of $60.00 applied to all unimproved plots within the district or only to those plots connected to the sewer system. And if the former, was the resolution valid under the New York enabling statute? Since an understanding of state policy in regard to water pollution might have been required to decide the case, the federal judge was reluctant to examine the "peculiarly local" issue. Nevertheless, he resolved to hear the matter "because the parties offer[ed] the Court no choice." On April 6, 1965, Judge Bonsal denied all motions. There were genuine issues as to material facts. Fed.R.Civ.P. 56(c). Most importantly, what did the Town Board mean by "building plot"? And, what was the effect of the 1961 agreement between Rock Hill and S. M. W.? Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 240 F.Supp. 272 (S.D. N.Y.1965).

The Town Board responded by clarifying its 1960 intentions in a June 15, 1965 resolution. It resolved that it had intended the $60.00 to be charged and payable only with respect to building plots connected to the sewerage facilities and making use of them. Rock Hill then sought a declaratory judgment in the New York courts that this new ordinance was unconstitutional; the resolution, it claimed, deprived it of property without due process of law. However, on December 30,

1966, the New York court held that Rock Hill had no cause of action. The 1960 resolution would have been illegal and void if it were within its intent to charge owners not using the services; therefore, the 1965 resolution could not have deprived Rock Hill of something which it never had legally acquired under the 1960 resolution. Rock Hill Sewerage Disposal Corporation v. Town of Thompson, 27 A.D.2d 626, 627, 276 N.Y.S.2d 188, 190 (1966).

Meanwhile, in the federal court, in March 1966 plaintiff filed a notice of readiness for trial. However, in June 1967 before the trial, plaintiff moved to amend its complaint to allege that S. M. W. was liable to plaintiff for the $60.00 per lot for the sewerage charge—a repetition of the 1964 complaint [First cause of action]; that S. M. W., under the 1961 agreement, was relieved of paying the $60.00 charge only if it paid annually Rock Hill's net operating losses for the five-year period from August 31, 1961 to August 31, 1966 [Second cause of action]; that S. M. W. breached its agreement and failed to develop its tract and deliberately failed to install any sewer trunk lines, laterals and pumping stations [Third cause of action]; that S. M. W. fraudulently misrepresented its intentions in entering the 1961 agreement in order to induce Rock Hill to loan Lake Louise Marie Corp. $100,000 [Fourth cause of action]; that S. M. W. was obligated as principal to repay the loan of $100,000 made to its agent Lake Louise Marie Corp. [Fifth cause of action]; and that J. Ballay & Co. was liable to plaintiff for the $60.00 per lot for the sewerage charges [Sixth cause of action].

On August 22, 1967, Judge Tyler granted S. M. W.'s and J. Ballay & Co.'s motions for summary judgment. Plaintiff's 1967 motion to amend the complaint was denied. The judge reasoned that since plaintiff did not contend that S. M. W.'s property was connected to the sewer system, "the decision by the New York appellate court is binding upon this court and effectively demolishes the existing claim asserted by plaintiff against the

moving defendants in the case." Judge Tyler denied the motion to amend because (1) the action was three years old and had been on the trial calendar for over a year; (2) it seemed likely that it was an afterthought engendered by the surmise of counsel that the motions for summary judgment would be granted; (3) the new claims did not appear to be directly related to the original complaint; (4) the new claims either were or might be time-barred; and (5) this was not an action which, as a practical matter, belonged in the federal courts. Middle Atlantic Utilities Co. v. S. M. W. Development Corp. and J. Ballay & Co., Inc., 64 Civ. 1654 (S.D.N.Y., filed August 2, 1967).

## II.

■■ The federal courts must apply the most recent interpretation of state law in diversity cases. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). The Town Board resolution of 1965 determined the meaning of "building plot"; the *Rock Hill* case supported the validity of the resolution. A service charge could be rendered only against connected and serviced plots. Summary judgment was proper.

■ Plaintiff's contention that Judge Bonsal's denial of the motion for summary judgment is the law of the case is without merit. The situation had changed since his original ruling; the facts, which Judge Bonsal had sought, had been supplied. Judge Tyler could not ignore these developments, namely, (1) the Town Board resolution and (2) the *Rock Hill* decision.

## III.

■ It is within the trial judge's discretion to grant leave to amend a complaint. However, he may not abuse his discretion, and if he refuses "to grant the leave without any justifying reason," Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), or bases a denial to amend on erroneous be-liefs, Rogers v. White Metal Rolling and Stamping Corp., 249 F.2d 262 (2 Cir. 1957), cert. denied, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 812 (1958), such a denial is reviewable. Amendments should be granted liberally. Fed.R.Civ.P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires." If the proposed amendment alleges facts or circumstances which may be a proper subject of relief, the suitor, in the absence of sufficient reasons for denying him this opportunity, should have a chance to test his claim on the merits. Foman v. Davis, supra, 371 U.S. at 182, 83 S.Ct. 227. Narrow pleading rules should not be applied to foil an honest plaintiff's efforts to gain redress. In examining the circumstances which might justify not granting plaintiff this opportunity to be heard on the merits, the trial courts should normally focus on the resultant prejudice to defendant. United States v. Hougham, 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960); Ricciuti v. Voltarc Tubes, Inc., 277 F.2d 809, 814 (2 Cir. 1960). Here, the trial judge made no finding of prejudice; the other reasons presented for denying the motion are insufficient. Plaintiff should not have to begin again and return to the foot of the trial calendar.

■■ The three-year delay from the filing of the initial complaint is an inadequate basis for denying a motion to amend. It may be a factor to be considered but unless the motion either was made in bad faith or will prejudice defendant, delay by itself is not enough to deny the requisite relief. Public Administrator of New York County v. Curtiss-Wright Corp., 224 F.Supp. 236, 238 (S.D.N.Y.1963). At the time of the 1964 complaint, plaintiff could not reasonably have anticipated that its original cause of action would be nullified by subsequent town and state action. When it became apparent, after the *Rock Hill* decision, that its complaint would probably be dismissed, plaintiff acted; even before defendant renewed its motion for summary judgment plaintiff sought to amend its

complaint.[1] Plaintiff was not tardy in its action; it responded more diligently than defendant did to the local developments. The three-year delay from the time of filing the complaint does not support a finding of bad faith on the part of plaintiff or of prejudice to defendant.

As a basis for denying the motion to amend, the "after-thought" reasoning is analogous to the "delay" argument. In this case, the *Rock Hill* decision probably did alert counsel for plaintiff to the unfavorable prospects. In some cases, a basis for "denial of leave to amend [is] the bad faith of appellant in waiting to see how he would fare on the prior motion to dismiss." Vine v. Beneficial Finance Co., Inc., 374 F.2d 627 (2 Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). (The trial judge in *Vine* dismissed the motion to amend the complaint, basing his decision, in part, on the insufficiency of the amendment as a matter of law. Vine v. Beneficial Finance Co., Inc., 65 Civ. 3050 (S.D.N.Y., filed April 6, 1966).) However, merely moving to amend the complaint *after* the first complaint has been dismissed is an insufficient reason to dismiss the motion to amend the complaint. Foman v. Davis, supra. Here, the motion was made *before* trial, albeit because of a state court decision; moreover, there is no evidence of any bad faith on the part of plaintiff. Many amendments will be afterthoughts; often they will be engendered because counsel anticipates defeat on the initial complaint. Such realities alone do not support the denial of a motion to amend.

The claims here are related to the original complaint. The first complaint was for recovery of sewer rents. It was based on the Town Board resolu-

tion. The causes of action sought to be added all relate to the supposed release, or the inducements offered for the release, by Rock Hill not to collect sewer rent under the contract of March 23, 1961, which allegedly required S. M. W. to perform certain obligations. Apparently aware of the interconnection of the various claims, defendant had earlier introduced the 1961 agreement as a defense in the suit for sewer rents.

Furthermore, if a meritorious claim is offered, and if there will be little resultant prejudice to defendant, plaintiff is normally entitled to a hearing on the merits. This is especially true where the new matter could have been included in the original pleadings. Under those circumstances, plaintiff would not be receiving a calendar preference for a claim which could not conceivably have been pleaded earlier. James, Civil Procedure, 161 (1965). Here, all the additional claims could have been pleaded at the time the initial complaint was filed. The contract had allegedly been breached and the alleged fraud had been discovered before 1961.[2]

The trial judge further found that the claims "are or may be time-barred." It is normally proper for the trial judge to consider the statute of limitations on a motion to amend. To delay until there is a later motion to dismiss because the claim is time-barred would be a wasteful formality. DeLuca v. Atlantic Refining Co., 176 F.2d 421, 424 (2 Cir. 1949), cert. denied, 338 U.S. 943, 70 S.Ct. 423, 94 L.Ed. 581 (1950); see, Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 90 A.L.R.2d 252 (2 Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Either the statute of limitations does or does not

---

1. Plaintiff first raised the issue of amendment at a pretrial hearing on June 5, 1967. *Brief for appellant at 7.* Defendant did not seek to renew his motion for summary judgment until June 27, 1967.

2. S.M.W. first breached the agreement of 1961, it is alleged, as early as August 31,

1962, when the first net operating loss payment became due. An action for fraud and misrepresentation could have been brought as early as September 1962 when plaintiff first learned of it. *Brief for appellant at 9.*

bar the action.[3] Furthermore, even if the amended causes would be barred by the statute, they might relate back in time to the initial filing date. The trial judge made no finding that the amended complaint did not arise out of the "same conduct, transaction or occurrence" Fed. R.Civ.P. 15(c), as the First Complaint.[4] Since he did not mean his memorandum to be a binding determination on this point, his thought that the claim "may be time-barred" is insufficient to support a denial of the motion to amend.

If there is diversity of citizenship between the parties to the suit, Congress has authorized plaintiffs to choose a federal forum to try their suit, 28 U.S.C. § 1332 (1964); principally, this is to allow suitors to avoid local prejudice. The federal courts may not turn down legitimate suitors merely because the state law is confused and complicated. Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). This same principle should apply on a motion to amend; if the motion is dismissed, plaintiff need only begin again to assure a hearing in the federal courts.

The trial judge made no finding that there would be any prejudice to defendant if the motion were granted; nevertheless, defendant contends that it will be injured. It claims that the "pendency of the claim is a substantial cloud upon value, and effectively prevents defendant from selling." Brief, Appellee, p. 9. However, the sooner there is a trial on the merits, the more quickly will defendant be relieved of the uncertainty.

Defendant also argues that the allowance of the amendment will necessitate further discovery, motions, etc., and that all these would be expensive and time-consuming. Portsmouth Baseball Corp. v. Frick, 21 F.R.D. 318 (S.D.N.Y. 1958). Nevertheless, the resulting prejudice is here inadequate to support denial of the motion. Defendant has long known of the contract and the disagreement over its interpretation; the amended complaint was introduced before the trial; there is no evidence of how difficult it will be to be acquire further information. The purpose of the federal rules is to provide for full and fair hearings on the merits. The burden of further discovery and motions is not a satisfactory basis to deny the motion to amend. Such procedural aspects can be regulated and controlled by the trial court.

Finally, defendant alleges that the amended complaint does not state a claim upon which relief can be granted. The essence of its argument is that the contract does not say what plaintiff claims it does. As to the misrepresentation and fraud, it merely argues that plaintiff's allegations are untrue. How-

---

3. Although this is not to be binding on the point, it is probable that the contract cause of action was brought within the requisite six years. N.Y.Civil Practice Law and Rules §. 213(2), as amended (McKinney Supp.1967). The statute does not begin to run until the contract is first breached. Braunwarth v. Wellington, 48 N.Y.S.2d 159 (Sup.Ct.1943), aff'd, 269 App.Div. 747, 55 N.Y.S.2d 116 (1945), leave to appeal denied, 294 N.Y. 639, 63 N.E.2d 29 (1945), and the first payment of net operating losses was not due until August 31, 1962. Plaintiff also has six years from the date he should have, with reasonable diligence, discovered the fraud to bring an action for it. N.Y.Civil Practice Law and Rules § 213(9), as amended (McKinney Supp.1967). Plaintiff did not discover the misrepresentation until September, 1962.

4. Although this, too, is not to be binding on the point, it is probable that the added causes do arise from the same "conduct, transaction or occurrence" as was found in the original complaint. Defendant knew from the beginning of the suit that plaintiff sought damages and losses arising out of the sewer operations. The same Town resolution, and the contract to waive its provisions, are the basis for all the causes. Defendant was also well aware of the 1961 contract, and the disagreement over its meaning. The added causes would therefore probably relate back to the date of the filing of the initial complaint. Tiller v. Atlantic Coast Line Railroad Co., 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945).

ever, the intentions of contracting parties and disputed facts are usually found by the trial judge only after hearing the merits argued by opposing counsel. Plaintiff is entitled to such a hearing.

The granting of the motions for summary judgment are affirmed. The denial of plaintiff's motion to amend its complaint is reversed.