Beatrice **TURNER**

v.

**MITCHELL PONTIAC, INC.**

**Civ. No. H–90–484 (AHN).**

United States District Court, D. Connecticut.

Sept. 3, 1991.

As Amended Sept. 10, 1991.

Michael E. Satti, Schatz & Schatz, Hartford, Conn., for plaintiff.

David B. Beizer and Jay B. Weintraub, Beizer & Weintraub, West Hartford, Conn., for defendant.

## RULING ON PENDING MOTIONS

NEVAS, District Judge.

In this case, the plaintiff, Beatrice Turner ("Turner"), a former employee of Mitchell Pontiac, Inc. ("Mitchell"), brought suit under Tile VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2, *et seq.*, and under the Connecticut Fair Employment Practices Act., Conn.Gen.Stat. § 46a–60(a)(1), alleging employment discrimination based on sex and religion. The plaintiff seeks lost wages and benefits as well as injunctive and declaratory relief. Now pending is the defendant's motion to strike the plaintiff's request for a jury trial (filing 14) as well as the plaintiff's motion for reconsideration of its motion for leave to file an amended complaint (filing 32). For the reasons that follow, both motions are granted. However, upon review of the record and the case law, the court's May 17, 1991 denial of the plaintiff's motion for leave to amend the complaint (filing 19) is affirmed.

### I.

### BACKGROUND

On December 26, 1990, the plaintiff filed a request for a trial by jury, six months after the complaint was filed. Plaintiff's counsel explained that when he filed the complaint on June 15, 1990, he was aware that there was clear precedent against jury trials in Title VII cases. Nevertheless, he had claimed the matter for jury trial in the appropriate place on the civil cover sheet, which was served on the defendant, "disagreeing with existing precedent and hoping that time, logic and reason would yield precedent allowing Title VII claims to be tried to a jury." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Strike Jury Demand (filing 18), at 1–

2. The plaintiff's subsequent request for a jury trial was prompted by recent cases indicating a possibly emerging trend to the contrary in Title VII cases.

On January 7, 1991, Mitchell moved to strike the plaintiff's request for a jury trial on two grounds: 1) that Turner's request was not timely filed, pursuant to Fed. R.Civ.P. 38(b); and 2) that plaintiffs in Title VII cases are not entitled to a trial by jury. In response, Turner argued that her request on the civil cover sheet constitutes a timely request entitling her to a jury trial, citing *Favors v. Coughlin*, 877 F.2d 219, 229 (2d Cir.1989) and *Winant v. Carefree Pools*, 118 F.R.D. 28, 29 (E.D.N.Y.1988); and that the court should exercise its discretion, pursuant to Fed.R.Civ.P. 39(b), and grant the request even if it was not timely served. In addition, on February 11, 1991, eight months after the complaint was filed, with discovery virtually complete, the plaintiff filed a motion to amend the complaint by adding four state law claims.

The court held oral argument on May 17, 1991 on the defendant's motion to strike and the plaintiff's motion for leave to file an amended complaint. The court reserved on the issue of the right to a jury trial in Title VII cases, inviting the parties to submit further briefs. Following the hearing, the court denied the plaintiff's motion to amend its complaint. Thereafter, on May 28, 1991, the plaintiff filed a motion for reconsideration of its motion for leave to file an amended complaint.

### II.

### DISCUSSION

A. Defendant's Motion to Strike the Jury Demand

1. *The Language of the Statute*

■■■ While Title VII itself makes no mention of any right to a jury trial, the language of the statute indicates that Congress intended to provide for equitable remedies administered by the courts.[1] The

---

1. The Seventh Amendment to the United States

Constitution states that in "[s]uits at common

statute empowers a court, not a jury, to enjoin any unlawful employment practice, reinstate the employee with or without back pay, or provide for "any other equitable relief."[2] This inclusion by Congress in Title VII of specific, well-defined equitable remedies weighs strongly against implying any additional scheme. *Sherman v. Burke Contracting Inc.*, 891 F.2d 1527, 1540 (11th Cir.1990) (Tjoflat, C.J., concurring); *see Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15, 101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435 (1981) ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."). The wording of the statute thus indicates that the legislative intent was to empower courts with the discretion to administer equitable remedies in response to Title VII violations.

### 2. *Legislative History*

The legislative history reveals that the Civil Rights Act of 1964 was modeled on the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(c) (1982). *See* 110 Cong.Rec. 6549 (remarks by Senator Humphrey in introducing the Civil Rights Bill for debate in the Senate on March 30, 1964), 7214 (remarks of Senators Clark and Case). At the time, Congress was aware that the Supreme Court had interpreted the NLRA provision as not allowing punitive or compensatory damages. *See United Auto Workers v. Russell*, 356 U.S. 634, 645–46, 78 S.Ct. 932, 939–40, 2 L.Ed.2d 1030 (1958). "Although not conclusive, the similarity of the statutes and the fact that Congress

was aware that neither punitive nor compensatory damages were allowed under the National Labor Relations Act leads to the firm belief that Congress did not intend that any money damages ... would be granted under ... [Title VII]." *Harrington v. Vandalia–Butler Bd. of Educ.*, 585 F.2d 192, 197 (6th Cir.1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979) (quoting *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829, 836–38 (N.D.Cal. 1973)). According to the House report on the Bill, "[t]he purpose of this title is to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment." House Report No. 914, 1964 U.S.Code Cong. and Admin.News 1964, pp. 2355, 2401. The Commission, the agency which was to carry out the purpose of the statute, "would confine its activities to correcting abuse, not promoting equality with mathematical certainty." *Id.* at 2516. Thus, the agency would work in a corrective, not a punitive, manner. 368 F.Supp. at 836–38.

### 3. *Back Pay as an Equitable Remedy*

Nevertheless, two recent cases authored by Judge Acker in district court in Alabama have questioned whether there should be a right to a jury trial in Title VII cases since back pay is a monetary remedy and monetary remedies have traditionally been viewed as legal. In *Walton v. Cowin Equip. Co., Inc.*, 733 F.Supp. 327 (N.D.Ala. 1990), *reversed and vacated*, 930 F.2d 924 (11th Cir.1991), the court questioned the logic of classifying back pay as an equitable remedy under Title VII but as a legal compensatory remedy under 42 U.S.C. § 1981.[3] As noted by Judge Acker,

---

law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ..." U.S. Const.Amend. VII. Thus, a cause of action created by Congress will carry a jury trial as a matter of right if "analogous to '[s]uits at common law.'" *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). Suits brought in equity will be tried before the court.

**2.** Section 706(g) of the Act, as set forth in 42 U.S.C. § 2000e–5(g) provides:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may en-

join the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

**3.** The court notes that the facts in *Walton v. Cowin* are distinguishable from those of the instant case in that there, the plaintiff had filed a complaint under both Title VII and 1981. However, due to a change in law, the 1981

"unless Congress is empowered to make 'black' into 'white' by the simple device of renaming the two to suit some salutary purpose, a 'legal remedy' cannot be converted into 'equitable relief' by calling it 'equitable.' " *Walton v. Cowin*, 733 F.Supp. at 331. *See also Walker v. Anderson Electrical Connectors*, 736 F.Supp. 253 (N.D.Ala.1990) (Acker, J.), *later proceeding*, 742 F.Supp. 591, 593 (1991) ("It would be an impermissible anomaly for 'back pay' to be a legal remedy under the ADEA but an equitable remedy under Title VII. If 'back pay' is a legal remedy, the Seventh Amendment clearly controls who shall make the factual determinations."); [4] *Selbst v. Touche Ross & Co.* 587 F.Supp. 1015, 1017 (S.D.N.Y.1984) ("It may seem odd that Congress should preclude punitive damages and the right to a jury trial in Title VII cases, and then permit the recognition of such rights and claims in such actions through the device of pendent jurisdiction. That is, however, an oddity for Congress to correct.") However, Judge Acker's opinion in *Walton v. Cowin* was reversed, vacated, and remanded by the eleventh circuit, 930 F.2d 924 (11th Cir. 1990) (holding that Title VII actions are proceedings in equity; hence, Title VII litigants are not entitled to a trial by jury).[5] Thus, the primary case that the plaintiff relies on to support its request for a jury demand is not good law. Absent the Alabama case, however, there is virtually no authority for jury trials in Title VII cases.

### 4. *The Prevailing View*

Despite the Supreme Court's recent pronouncement, on which Judge Acker relied, in *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 1335 n. 1, 108 L.Ed.2d 504 (1990) that the Court has "not yet ruled

on the question of whether a plaintiff seeking relief under Title VII had a right to a jury trial" and in *Teamsters Local 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990) (Court assumed without deciding that plaintiffs in Title VII cases have no right to a jury trial), the Supreme Court has held that not every "award of monetary relief must necessarily be 'legal' relief." *Curtis v. Loether*, 415 U.S. 189, 196–97, 94 S.Ct. 1005, 1009–10, 39 L.Ed.2d 260 (1974) (describing back pay under Title VII as 'restitutionary' as distinguished from 'legal' damages). In *Terry*, the Court found that "Congress specifically characterized back pay under Title VII as a form of 'equitable relief.' " 110 S.Ct. at 1348. *See also Great American Loan Association v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979) ("Because (Title VII) expressly authorizes only equitable relief, the courts have consistently held that neither party has right to a jury trial."); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415–421, 95 S.Ct. 2362, 2370–2373, 45 L.Ed.2d 280 (1975) (reinstatement and back pay are discretionary, equitable remedies). Thus, in numerous cases, the Court has found back pay to be an equitable remedy in the Title VII context. As explained by the court in *Culpepper v. Reynolds Metals Co.*, 296 F.Supp. 1232, 1241 (N.D.Ga.1969):

> The focus of this Act [Title Seven] is upon the elimination of discrimination in employment, the freedom from which there was no guarantee at common law.... This Act emphasizes not the collection of private debts but the protection of the public interest. The back pay remedy, which is actually only a small part of the remedial scheme envisioned by the Act, is public in nature, aimed at restoring the status which would have

claim, which conferred a right to a jury trial, was dismissed. In this case, however, the original complaint was filed under Title VII and the Connecticut Fair Employment Practices Act, neither of which has been interpreted as conferring a right to a jury trial.

**4.** The facts in *Walker* are also distinguishable from those of the instant case in that there, the plaintiff filed pendent state law claims conferring a right to trial by jury at the same time that the Title VII claim was filed.

**5.** On April 12, 1991, the district court in *Walton v. Cowin* granted the plaintiff's motion to stay the remand proceedings pending the plaintiff's writ of certiorari to the United States Supreme Court. The opinion in *Walker* has similarly been appealed but no decision by the eleventh circuit has as yet been reported.

existed but for the forbidden discrimination.

*Id.* at 1241.

The Court has also distinguished between the remedies available under Title VII and § 1981, which, "although related and although directed to most of the same ends are separate, distinct, and independent." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Whereas Title VII is meant as a general proscription of racial discrimination in all aspects of employment, § 1981 applies only to the formation and enforcement of contracts. *Patterson v. Mclean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2375 n. 4, 105 L.Ed.2d 132 (1989). Title VII's remedies are equitable in nature as they are intended to effectuate the statutory purpose. As the eleventh circuit found, "Congress did not authorize the courts to grant legal remedies (compensatory and punitive damages) [under Title VII] because such relief could not achieve the Congressional purposes behind [the statute].... An award of back pay although taking the form of monetary relief, is intertwined with equitable remedies designed to perpetuate or create employment relationships." *Sherman v. Burke Contracting Inc.*, 891 F.2d 1527, 1537 (11th Cir.1990) (Tjoflat, C.J., concurring); *see also Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829, 837 (N.D.Cal.1973) (Congress intended Title VII as a tool for ensuring equal opportunity in employment not as a device for punishing those who frustrate that goal); *Johnson v. Georgia Highway Express Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969) ("The demand for back pay is not in the nature of a claim for damages, but rather an integral part of the statutory equitable remedy....").

The Supreme Court has thus found Title VII remedies to be equitable in nature and has found no right to a jury trial in Title VII claims. *See also Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 953 (2d Cir.1988); *Selbst v. Touche Ross & Co.*, 587 F.Supp. 1015, 1017 (S.D.N.Y.1984).[6] Therefore, in light of the equitable nature of Title VII remedies, the language of the statute, and the apparent intent of Congress, this court follows well-established precedent and finds that Title VII claims are brought in equity and are therefore not triable to a jury.[7] Thus, the defendant's motion to strike the plaintiff's request for a jury trial is granted. Because this court has found that there is no right to a jury trial in Title VII cases, the court need not reach the argument as to the timeliness of plaintiff's request for a jury trial.

## B. Plaintiff's Motion for Reconsideration of its Motion to Amend

■ The grant or denial of a motion for leave to amend is within the sound discretion of the district court and will be reversed only for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Rule 15(a), Fed.R.Civ.P., mandates that leave to amend "shall be freely

---

6. The other circuit courts have similarly held that since Title VII cases are in equity, Tile VII litigants do not have a right to a jury trial. *See, e.g., Olin v. Prudential Ins. Co. of America*, 798 F.2d 1, 7 (1st Cir.1990); *Keller v. Prince George's County*, 827 F.2d 952, 955 (4th Cir.1987); *Johnson v. Georgia Highway Express*, 417 F.2d 1122, 1125 (5th Cir.1969); *McFerren v. County Bd. of Educ.*, 455 F.2d 199 (6th Cir.1972); *Grayson v. Wickes Corp.*, 607 F.2d 1194, 1196 (7th Cir. 1979); *Shah v. Mt. Zion Hospital and Medical Center*, 642 F.2d 268, 272 (9th Cir.1981); *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 940 (10th Cir.1979); *Sherman v. Burke Contracting Inc.*, 891 F.2d 1527, 1537 (11th Cir.1990) (Tjoflat, C.J., concurring); *Wilson v. City of Aliceville*, 779 F.2d 631 (11th Cir.1986).

7. Support for this court's conclusion may be found in pending legislation already passed by the House of Representatives, which would expand the remedial scheme of Title VII. In keeping with seemingly clear precedent, the proposal notes that "compensatory damages shall not include back pay ..." H.R. 1, p. 11 (1991) and that: "If compensatory or punitive damages are sought with respect to intentional discrimination arising under this title, any party may demand a trial by jury." *Id.* It would thus seem that under the current statutory scheme, the House of Representatives believes that no right to a jury trial in Title VII cases exists.

given when justice so requires." The second circuit has found the denial of such a motion to be within the sound discretion of the district court where, for example, there was "extended delay and failure to raise initially claims of which ... [the plaintiff] was well aware." *Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75, 81 (2d Cir.1980), *cert. denied*, 454 U.S. 1083, 70 L.Ed.2d 618 (1981). *See also Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 384 (2d Cir.1968). In the instant case, the plaintiff waited eight months to file its motion to add the pendent claims, stating that the four state law claims are based on newly discovered evidence. As the defendant argues, however, "every one of the four new causes of action are based on facts either that were *known* to the plaintiff or *that should have been known to the plaintiff prior to its filing its original Complaint.".* (emphasis in original). Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint (filing 26), at 3. At the same time, the plaintiff maintains that all the claims arise from the same nucleus of operative facts as the Title VII claim, so as to warrant pendent jurisdiction. Thus, since the plaintiff admits that its new claims are based on the same facts as the Title VII claim, it would seem that the plaintiff should indeed have known about them when the original complaint was filed. The pendent claims could then have been filed at the time the Title VII claim the Title VII claim was filed.[8] In addition, depositions have already been taken and would have to be retaken if the pendent claims were now added. This court thus affirms its prior ruling denying plaintiff's motion for leave to amend.

### Conclusion

For the foregoing reasons, the defendant's motion to strike the plaintiff's request for a jury trial is granted. The court, having granted that plaintiff's motion for reconsideration, after review of the

record and the case law, reaffirms its ruling of May 17, 1991 denying plaintiff's motion to amend the complaint.

SO ORDERED.

---

**8.** Indeed, there may be more than coincidence in the fact that plaintiff's motion to amend follows closely on plaintiff's request for a jury trial in her Title VII claim, suggesting, as the defendant argues, that plaintiff attempts to use the device of pendent jurisdiction to obtain a jury trial.