**Lisa HUTCHINS and Dustin Hutchins, by his next friend and guardian, Lisa Hutchins, Plaintiffs,**

v.

**Michael PETERSON, Shawn Lundrigan, and Thomas L'Esperance, Defendants.**

**No. 2:00–CV–457.**

United States District Court, D. Vermont.

March 14, 2001.

Thomas Walter Costello, Thomas W. Costello, P.C., Brattleboro, VT, Herbert G. Ogden, Liccardi, Crawford & Ogden, Rutland, VT, for Lisa Hutchins, Dustin Hutchins, by his next friend and guardian, Lisa Hutchins bnf Lisa Hutchins, plaintiffs.

Nancy Goss Sheahan, McNeil, Leddy & Sheahan, P.C., Burlington, VT, James F. Carroll, Powers, English, Carroll & Ritter, Ltd., Middlebury, VT, Joseph Leon Winn, Vermont Attorney General's Office, Montpelier, VT, for Michael Petersen, Shawn Lundrigan, Thomas L'Esperance, defendants.

### OPINION AND ORDER

SESSIONS, District Judge.

Plaintiffs Lisa Hutchins ("Hutchins") and Dustin Hutchins ("Dustin") (collectively, "Plaintiffs") bring this action against defendant-police officers, Michael Peterson ("Peterson"), Shawn Lundrigan ("Lundrigan"), and Thomas L'Esperance ("L'Es-

perance") (collectively, "Defendants"), for depriving Hutchins of her civil rights under 42 U.S.C. § 1983 and the Vermont Constitution and for various common law torts stemming from their allegedly unlawful arrest and prosecution of Hutchins for distribution of crack cocaine. Lundrigan and L'Esperance ("Movants") move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs move to amend the complaint. For the reasons that follow, Lundrigan and L'Esperance's motion to dismiss (Paper 20) is **DENIED** and Plaintiffs' motion to amend the complaint (Paper 22) is **GRANTED**.

### I. Background [1]

Around November 1997, various members of Vermont law enforcement, including Defendants, were conducting an investigation of an alleged "crack house" at 44 Maple Street in Brattleboro, Vermont. As part of that investigation, they hid a video camera in a van in a driveway across the street from 44 Maple Street in order to monitor the comings and goings of its visitors.[2]

On November 3, 1997, a day on which the police videotape was running from 9:15 a.m. until 4:30 p.m., Lundrigan entered 44 Maple Street to make an undercover buy of crack. There were several people present in the house, one of whom, a white woman, accepted Lundrigan's payment for the drugs. Lundrigan described this woman as "in her thirties with tattoos on her

---

1. The following facts are construed, as they must be on a motion to dismiss for failure to state a claim, in the light most favorable to Plaintiffs. Furthermore, because the Court here grants Plaintiffs' motion to amend their complaint, the Court relies on the allegations in the proposed amended complaint even though it has not been formally filed yet.

2. It was "impractical" to enter or leave the premises of 44 Maple Street without either using the front door or passing along the side of the house to reach the back door. *See* Proposed Am. Compl. ¶ 5, attached to Mot. to Amend Compl. Thus, because the camera was directed at the front and sides of the house, any person entering or exiting 44 Maple Street would presumably be caught on film, at least while the camera was running.

left arm" and with "dirty blond, shoulder length, straight hair."[3] Compl. ¶ 11 (Paper 9). When Lundrigan returned to 44 Maple Street for another undercover buy three days later, he asked a man there named William Hathaway for the name of "the girl" who sold him the drugs. *See* Proposed Am. Compl. ¶ 13. Hathaway said that her name was "Julie."[4] *Id.* ¶ 14.

On November 24, 1997, three weeks after Lundrigan's first undercover buy of crack at 44 Maple Street, Defendants went to Hutchins' residence "intend[ing] to confront and arrest [her]" because they believed her to be the "unknown 'Julie' who had sold crack cocaine to Lundrigan on November 3." Compl. ¶¶ 17–19. Peterson and/or L'Esperance "told [Hutchins] she was not in any trouble" and then proceeded to question her "about her involvement in drug sales at 44 Maple Street." Proposed Am. Compl. ¶ 20. Hutchins told the officers that she had not been present at 44 Maple Street on November 3 and had never sold crack cocaine or any other drug. L'Esperance then asked her to step outside to the front doorstep of her apartment building and Hutchins complied.

Although Hutchins did not know it, L'Esperance's purpose in asking her to step outside was so that Lundrigan could view her from the parked vehicle outside in which he was sitting for a "one person show up."[5] Compl. ¶ 22. Upon seeing Hutchins, Lundrigan signaled to the officers that she was the "Julie" they were looking for. Hutchins was then arrested, handcuffed and taken away. Dustin, her son, was at their residence during her arrest, and heard "his mother yelling to him when she was handcuffed" and "viewed her being taken away." *Id.* ¶¶ 28–29.

Subsequent to her arrest, Hutchins was interrogated, strip-searched, and held overnight in jail. According to the plaintiffs, "[a]ll of this occurred despite the fact that ... Defendants had a police videotape showing that [a woman named] Julie Maynard was the 'Julie' at [44 Maple Street] on November 3," and that "[Hutchins] did not enter or leave the premises on November 3."[6] Proposed Am. Compl. ¶ 32. Plaintiffs also assert that the real "Julie" "had generally straight shoulder length hair that had been dyed light brown but was darker at the roots, ... a dark complexion, and was 35 years old," *id.*, whereas in November 1997, Hutchins

had fair light skin, hair that was blonde and wavy with curls and reached well below her shoulders, blue eyes, tattoos

---

**3.** In addition to one white and one black male who were present, Lundrigan saw one other female at 44 Maple Street on November 3. She is described in the complaint as a "lighter dark skinned female" (lighter, the Court presumes, as compared to the black male who was present) who identified herself as "Lisa," but whose real name turned out to be Julieanna Shea. Compl. ¶ 10 (Paper 9).

**4.** It is not clear from the complaint which "girl" Lundrigan and Hathaway were referring to, since there were two women present at the time of the November 3 buy. However, since it was the white woman who was alleged to have accepted the payment for the drugs, this conversation most likely related to her.

**5.** Plaintiffs allege that "[n]o ... proper identification procedure was followed to ensure that th[is] show up was not overly suggestive." Compl. ¶ 27.

**6.** Especially since the videotape was only running from 9:15 a.m. until 4:30 p.m., the Court does not agree that it could conclusively "show" that Hutchins "did not enter or leave the premises on November 3" as Plaintiffs assert. *See* Proposed Am. Compl. ¶ 32. However, the fact that Hutchins does not appear on the videotape, if true, would certainly corroborate her assertion of innocence. Further, had Defendants identified the real "Julie" from the videotape, Hutchins may have been exculpated.

on both arms; habitually wore three or four bracelets on each wrist, six earrings on her left ear and four on her right, five rings on her right hand and four on her left, and a school ring on her left thumb; and was 28 years old,

*id.*

At some point after Hutchins' arrest (although the complaint does not say exactly when), the police "obtained information" that Hutchins "did not sell drugs at 44 Maple Street." *Id.* ¶ 33. However, Plaintiffs assert that "Defendants continued to press charges against [Hutchins] for a period in excess of five months." *Id.* ¶ 34. "On or about April 29, 1998," the charges against Hutchins were dismissed. *Id.* ¶ 37.

Hutchins' arrest and prosecution on federal criminal drug charges with a possible prison sentence of twenty years

> (a) caused [her] to suffer from emotional distress and humiliation, (b) required her to report to a probation officer and abide by conditions imposed by the Court and the probation officer including random urinalysis testing and disclosure of confidential medical records, (c) caused [her] to be repeatedly named in newspaper articles as a suspected drug dealer, (d) caused [her] to require the assistance of legal counsel to fight the wrongful and unfounded charges, (e) caused [her] to require the assistance of a professional investigator to clear her name, (f) caused conditions of release allowing [her] to travel only in Vermont, and (g) thus effectively allowed plaintiff Dustin to travel only in Vermont.

*Id.* ¶ 35. Plaintiff Dustin "suffered humiliation, anxiety, embarrassment and loss of parental consortium." *Id.* ¶ 36.

Plaintiffs filed a complaint on October 31, 2000, in Windham Superior Court, Bennington, Vermont, alleging that Defendants' acts were intentional and violated Hutchins' rights under the Fourth, Fifth,

Ninth and Fourteenth Amendments to the United States Constitution, "including the right to be secure against unreasonable search of one's person, the right to be secure in one's person, and the right not to be deprived of liberty without due process of law, all in violation of 42 U.S.C. § 1983." Compl. ¶¶ 38, 41. They also alleged that Defendants deprived Hutchins of her civil rights secured by Articles 1, 9, 10, and 11 of Chapter I of the Vermont Constitution, "including the right to be secure in one's person, and the right not to be deprived of liberty without due process of law," in violation of the Vermont Constitution Chapter II § 71. *Id.* ¶ 43. Further, under Vermont common law, Plaintiffs alleged that the defendants' conduct constituted invasion of privacy, intentional infliction of severe emotional distress by extreme and outrageous conduct, false arrest and false imprisonment. Finally, Plaintiffs alleged that "as a result of the foregoing," Dustin suffered a loss of parental consortium. *Id.* ¶ 48. In their proposed amended complaint, Plaintiffs also seek to add a common law claim of malicious prosecution and assert that Defendants' acts were malicious in addition to being intentional.

Lundrigan and L'Esperance removed the case to federal court on December 8, 2000, and now move, under Fed.R.Civ.P. 12(b)(6), for dismissal of the entire complaint for failure to state a claim upon which relief can be granted. As the first ground for their motion, they assert that, because they had probable cause to arrest Hutchins, their actions did not deprive her of a federally-protected right and therefore her § 1983 claim must be dismissed. Second, Movants argue that even if they deprived Hutchins of federally-protected rights, such rights were not clearly established and thus, they are entitled to qualified immunity on her federal claims. Third, Movants assert that Hutchins' state

claims should be dismissed on the basis of qualified immunity as well.

Movants also argue that Dustin's claim of loss of parental consortium should be dismissed because it is derivative, and therefore its viability depends on the viability of the underlying tort claims. Their sole argument on this issue, which they only mention in a footnote in their memorandum and nowhere, for that matter, in their actual motion, is that because Hutchins' claims are not viable, neither is Dustin's. *See* Mem. on [sic] Supp. of Defs. Lundrigan's and L'Esperance's Mot. to Dismss [sic] at 4 n. 2 (Paper 21) [hereafter, "Movants' Mem."].

Plaintiffs move to amend the complaint to add some factual details, an allegation that the defendants acted with malice, and a state tort claim of malicious prosecution.

## II. Discussion

### A. Lundrigan and L'Esperance's Motion to Dismiss

In considering a motion to dismiss for failure to state a claim, a court must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir.1997). "[T]he district court may dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir.2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Movants rest all of their arguments— that they did not violate any of Hutchins'

federally protected rights and that they are entitled to qualified immunity on both the federal and state claims—on the assertion that they had probable cause to arrest Hutchins. *See* Movants' Mem. at 5 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); *id.* at 9 (resting qualified immunity from federal claims on the asserted presence of probable cause); *id.* at 11 (resting qualified immunity from state claims on the asserted presence of probable cause); *see also id.* at 4 n. 2 (arguing that Dustin's derivative loss of consortium claim should be dismissed simply because Hutchins' "underlying claims are not viable"). Thus, the central issue that the Court must resolve in addressing each of Movants' arguments is whether, on the facts asserted in Plaintiffs' complaint, it appears beyond doubt that the Defendants had probable cause to arrest Hutchins. However, because Movants address each of the following issues separately, and because the probable cause inquiry varies slightly depending on its context,[7] the Court takes up each of Movants' arguments in turn.

### 1. Was there a violation of a federally protected right?

■ As Movants correctly point out, courts should consider "the merits of the constitutional claims presented before turning to an analysis of qualified immunity." *Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir.1998) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Accordingly, Movants' first argument is that they did not violate any of Hutchins' federally protected rights because they had probable cause to arrest her.

---

**7.** For example, in the context of qualified immunity, the issue is not whether Defendants in fact had probable cause, but rather, whether, on the facts as asserted in the complaint, "the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997).

 Movants are correct insofar as they assert that "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). Moreover, a police officer has probable cause to arrest someone if, "on the basis of the totality of the circumstances, [he] has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." [8] *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.1990).

The Second Circuit has emphasized the importance of recognizing

the difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment. At the 12(b)(6) stage, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test."

*Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998) (alteration in original) (quoting *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996)). Moreover, in at least one case, the Second Circuit reversed a district court's dismissal on a 12(b)(6) motion, which had been granted in part on the grounds that the officers had probable cause to arrest, holding that "it was improper for the district court to conclude, *at this stage of the litigation*, that it was reasonable for the officers to believe that probable cause existed." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir.1999).

 In the case at bar, the Court finds it would be similarly improper to conclude, at this stage of the litigation, that it was reasonable for Defendants to believe that they had probable cause to arrest Hutchins. Even if there is no constitutional right to a particular type of show-up, as Movants allege, and even though police officers are generally entitled to rely on the allegations of their fellow officers, under the totality of the circumstances in this case as alleged in the complaint, Defendants' actions in arresting Hutchins may have been unreasonable. According to the complaint, which the Court must accept as true for purposes of this motion, Defendants, acting in concert, conducted a surveillance of a suspected "crack house," obtained (firsthand, for Lundrigan) a description of a suspect operating out of that house, videotaped that suspect, and then, three weeks later, conducted an allegedly unreliable and suggestive show-up of Hutchins and arrested her, even though she did not match the description of the suspect that they had obtained and even though she could easily have been exculpated by the videotape that Defendants had in their possession for a significant period of time.[9] Considering all of these

8. The Court recognizes that the Second Circuit has recently held that, in making probable cause determinations, police officers are "entitled to rely on the allegations of fellow police officers." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000). However, the Court assumes that, while *Martinez* stands for the proposition that police officers can take into account the allegations of their fellow officers as an important factor in their probable cause determinations, the *Martinez* Court did not intend for courts to stop looking to the totality of the circumstances in their assessments of issues of probable cause.

9. Moreover, according to the complaint, it is not at all clear what the basis for Defendants' probable cause determination was, since they had allegedly decided to arrest Hutchins before they arrived at her house and Lundrigan identified her from the parked car. If in fact their decision to arrest her came before the

circumstances, the Court is unable to conclude "beyond doubt that [P]lantiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [the]m to relief." *Charles W.*, 214 F.3d at 357.

■ Furthermore, Movants cannot prevail on their motion to dismiss because they have not even addressed the issue of whether, once they had arrested Hutchins, they had probable cause to initiate a prosecution against her for purposes of any malicious prosecution claim she might have under the Fourth Amendment.[10] Thus, Movants' simple assertion that they had probable cause to arrest Hutchins, even if it could defeat a claim of false arrest under § 1983, would not defeat Hutchins' § 1983 claim in its entirety, since the existence of probable cause to *arrest* a person does not dispose of a § 1983 claim for malicious prosecution. Rather, Movants would have to show that they had probable cause to initiate a prosecution against Hutchins, which requires a different inquiry. *See id.* at 417 (noting that probable cause to arrest is not the same as probable cause to believe that someone could be successfully prosecuted for purposes of a § 1983 malicious prosecution claim). This they have not even attempted to do.

identification that Movants now assert as their basis for probable cause, Plaintiffs should have an opportunity to conduct discovery to determine what the actual basis for her arrest was.

10. There is no question that a police officer can be liable for malicious prosecution under § 1983, assuming, of course, that the prosecuted party can prove the elements of the claim. *See White v. Frank*, 855 F.2d 956, 959 n. 2 (2d Cir.1988) ("An action for malicious prosecution has long been available against an individual who (1) instituted criminal proceedings against the plaintiff (2) with malice and (3) without probable cause, if (4) the criminal proceedings terminated in the plaintiff's favor.").

Thus, the Court cannot conclude, based on the allegations in the complaint, that Defendants had probable cause to arrest and initiate a prosecution against Hutchins and, therefore, Movants have failed to establish that none of Hutchins' federally protected rights was violated.

## 2. Qualified immunity as to federal claims

■ Movants' second argument, that they are entitled to qualified immunity because Hutchins' rights were not clearly established, is similarly without merit.[11] "The doctrine of qualified immunity entitles public officials to freedom from suit for acts undertaken in their official capacity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633–34 (2d Cir.2000) (internal quotation marks omitted). Furthermore, "[s]ummary judgment on the basis of qualified immunity is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997).

11. In fact, Movants' argument on this point is logically inconsistent. They assert that "[e]ven if Plaintiffs could establish that federal rights were violated, Defendants Lundrigan and L'esperance are entitled to qualified immunity" because those rights were not clearly established. Movants' Mem. at 8–9. They then concede that "Plaintiff had a clearly established right not to be arrested in the absence of probable cause." *Id.* at 9. But, they argue, "probable cause existed." *Id.* However, the implicit premise of their argument was that it did *not* exist, since they assume for the sake of argument that Defendants had violated Hutchins' federally protected rights—specifically, here, the right not to be arrested without probable cause.

■ The only argument Movants make is that the rights alleged to be violated here—although the only right they address, as mentioned above, is the right not to be arrested in the absence of probable cause—were not clearly established.[12] This is flatly untrue. "Without a doubt, the right not to be arrested without probable cause is clearly established" for purposes of the doctrine of qualified immunity. *Martinez*, 202 F.3d at 634; *see also, e.g., Ricciuti*, 124 F.3d at 128 ("The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right.").

In any event, it is clear to the Court that Movants are not entitled to qualified immunity at this stage of the litigation, since, for the reasons set forth in Part II.A.1. of this opinion, *supra*, on the facts as asserted in the complaint, it is not clear whether "the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest."

12. As noted above, Movants' reasoning, which is faulty, is that because they had probable cause, this right was not clearly established. However, that is not the proper way to frame the inquiry, since the question, for purposes of qualified immunity, is whether the right was clearly established and not whether that right was violated in this case. Movants' argument with respect to whether the right was violated in this case was properly addressed—and rejected—in the Court's consideration, in Part II.A.1., *supra*, of whether Defendants violated one of Hutchins' federally protected rights.

13. The Court does not reach the issue of whether Hutchins has a private right of action under the provisions of the Vermont Constitution cited in Plaintiffs' complaint. Although it is unclear whether Lundrigan and L'Esperance intended to move to dismiss on this ground, the Court concludes that they have not properly raised the issue: they do not cite it as a basis for their motion, *see* Defs. Lundrigan's and L'Esperance's Mot. to Dismss [sic],

*Ricciuti*, 124 F.3d at 128. Therefore, Defendants are not entitled to qualified immunity on Hutchins' federal claims.

### 3. Qualified immunity as to state claims

Movants also assert that they are entitled to qualified immunity on Plaintiffs' state constitutional and tort claims and that those claims should therefore be dismissed.[13] The thrust of Movants' argument, as with their other arguments, is that Defendants had probable cause to arrest Hutchins. Therefore, Movants argue, they could not have known that their conduct violated clearly established rights and they should be immune from suit.[14]

The Court has already rejected Movants' assertion, on these facts and at this stage of the litigation, that they should be entitled to qualified immunity because they had probable cause to arrest Hutchins. There is nothing about the analysis under Vermont qualified immunity law that would lead the Court to come to a different conclusion in this context.[15]

and nowhere do they argue that the provisions of the Vermont Constitution do *not* support Plaintiffs' claims, or ask the Court to dismiss on the ground that the provisions are not self-executing.

14. With respect to Plaintiffs' state tort claims, Lundrigan and L'Esperance also assert that "the burden is on the Plaintiffs to establish that the rights she asserts are clearly established." Movants' Mem. at 10–11 (citing *Billado v. Appel*, 165 Vt. 482, 487, 687 A.2d 84 (1996)). Because the citation offered by Movants, however, in no way supports the proposition for which it was cited, the Court does not address this portion of their argument.

15. Under Vermont law, qualified immunity protects lower-level government employees from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority.... The outcome of the analysis depends on the objective rea-

#### 4. Dustin's loss of consortium claim

Finally, Movants argue, albeit only in a footnote in their memorandum, that Dustin's claim of loss of parental consortium should be dismissed as well because, as a derivative claim, its viability depends on the viability of the underlying tort claims—here, Hutchins' claims. Movants' sole argument here is that "[Hutchins'] underlying claims are not viable and Plaintiff Dustin's claims must be dismissed as well." Movants' Mem. at 4 n. 2. Because the Court believes the question of the viability of Hutchins' claims is still open, however, this argument fails, and Lundrigan and L'Esperance's motion to dismiss Dustin's claim (to the extent that one was made) is denied.

### B. Plaintiffs' Motion to Amend the Complaint

Plaintiffs move to amend their complaint to add some factual details, a malicious prosecution claim under state tort law, and an allegation that Defendants' acted with malice. Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has already been served, a plaintiff may amend his complaint by leave of the court and "leave shall be freely given when justice so requires ." Fed.R.Civ.P. 15(a). "It is within the trial judge's discretion to grant leave to amend the complaint." *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir.1968); *see also Hillburn v. Maher*, 795 F.2d 252, 264 (2d Cir.1986). "Amendments should be granted liberally," *Middle Atl. Utils.*, 392 F.2d at 384, however, and "[i]f the proposed amendment alleges facts or circumstances which may be a proper subject of relief, the suitor, in the absence of suffi-

cient reasons for denying him this opportunity, should have a chance to test his claim on the merits," *id*. Further, "[i]n examining the circumstances which might justify not granting plaintiff this opportunity to be heard on the merits, the trial courts should normally focus on the resultant prejudice to defendant." *Id.*

The amendments proposed by Plaintiffs do not threaten to prejudice Defendants at this early stage of the litigation, and Movants have not argued otherwise. Rather, their sole argument is that the amendments should be denied as futile as they would not survive a motion to dismiss. Specifically, they argue that the proposed amended complaint cannot support a malicious prosecution claim, because "[n]ecessary to a malicious prosecution claim under Vermont law are the elements of malice and lack of probable cause," Reply Mem. on [sic] Supp. of Defs. Lundrigan's and L'Esperance's Mot. to Dismss [sic] at 2 (Paper 24), and "Plaintiffs' complaint, even drawing inferences in Plaintiffs' favor, is insufficient to support a finding of malice or an absence of probable cause," *id.*

The Court has already rejected Movants' argument that the complaint is insufficient to support a finding that Defendants arrested Hutchins without probable cause. Therefore, *a fortiori*, the issue of whether Defendants had probable cause to initiate a prosecution against Hutchins is also an open question. *See Posr*, 180 F.3d at 417 (noting that its holding that there was a factual dispute as to probable cause to arrest necessarily "entails the rejection" of defendants' argument that there was probable cause to

sonableness of the official's conduct in relation to settled, clearly-established law. Thus, if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the

official is protected by qualified immunity from tort liability.
*Cook v. Nelson*, 167 Vt. 505, 509, 712 A.2d 382, 384 (1998) (internal citations omitted).

defeat a malicious prosecution claim). Thus, the only issue is whether, accepting Plaintiffs' factual allegations as true and drawing all inferences in Plaintiffs' favor, the complaint can support a finding that Defendants acted with malice. Under Vermont law, however, evidence of lack of probable cause is sufficient to support a claim of malice for purposes of a malicious prosecution claim. *Tveraas v. Coffey*, 818 F.Supp. 75, 79 (D.Vt.) (interpreting Vermont law), *appeal dismissed*, 9 F.3d 1536 (2d Cir.1993). Therefore, since there remains a factual dispute as to whether Defendants had probable cause with respect to the arrest and prosecution of Hutchins, Plaintiffs' complaint is sufficient to support a finding of malice for purposes of Hutchins' malicious prosecution claim, and their motion to amend is granted.

## III. Conclusion

Wherefore, the Court **DENIES** Lundrigan and L'Esperance's motion to dismiss and **GRANTS** Plaintiffs' motion to amend their complaint.