180 F.3d 409,
 Posr A. POSR, Plaintiff-Appellant,
v.
COURT OFFICER SHIELD # 207, Court Officer King Shield #
6385, Sap 1 Clerk of the Court Wilson Perez, New York State
Office of Court Administration, N.Y.C. Civil Court Judge
Lila Gold, John Doe, Jane Doe, Defendants-Appellees.
 No. 98-9205.
 United States Court of Appeals,
Second Circuit.
 Argued April 22, 1999.
Decided June 9, 1999.
 
 Appeal from a decision of the United States District Court for the Eastern District of New York (Nina Gershon, J.) dismissing the plaintiff's claims brought under 42 U.S.C. §§ 1983, 1985, and 1986. Affirmed in part, vacated in part, and remanded.
 Posr A. Posr, pro se, New York, NY, for Plaintiff-Appellant.
 Thomas B. Litsky, Assistant Attorney General, for Eliot Spitzer, Attorney General of the State of New York (John W. McConnell, Deputy Solicitor General; Robert A. Forte, Assistant Attorney General; Steven L. Vollins, Assistant Attorney General, of counsel), for Defendants-Appellees.
 Before: KEARSE and CALABRESI, Circuit Judges, and HAIGHT, District Judge.*
 CALABRESI, Circuit Judge:
 
 
 1
 Posr A. Posr, pro se and in forma pauperis, appeals from the dismissal of various civil rights claims accruing from his alleged mistreatment by, inter alia, two court officers of the Criminal Court for the City of New York, Kings County. In his complaint, Posr pleaded causes of action for denial of access to the courts, false arrest, malicious prosecution, retaliation for the exercise of a First Amendment freedom, and conspiracy to violate his constitutional rights. He also sought declaratory relief. The United States District Court for the Eastern District of New York (Gershon, J.) dismissed all of Posr's claims for damages, some on Eleventh Amendment grounds and others for failure to state a claim upon which relief could be granted. It did not rule on his request for a declaratory judgment.
 
 
 2
 We affirm the dismissal, pursuant to the Eleventh Amendment, of those claims that are brought against official arms of the State of New York as well as those brought against named defendants in their official capacities. We also affirm the judgment of the district court on the issues of denial of access to the courts and of conspiracy to violate Posr's constitutional rights. But on the issues of false arrest, malicious prosecution, and retaliation, we vacate the judgment below and remand for further proceedings. We direct that the district court exercise its best efforts to appoint counsel to represent Posr if Posr so requests, and we note that on remand the district court should address Posr's request for a declaratory judgment.
 
 BACKGROUND
 
 3
 This appeal is from a dismissal granted under Federal Rule of Civil Procedure 12(b). For present purposes, we are therefore required to accept the plaintiff's factual assertions, as stated in his complaint, as true. See Zinermon v. Burch, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Accordingly, the description of events that follows reflects the allegations in Posr's complaint.
 
 
 4
 On May 2, 1996, Posr attempted to enter the Criminal Court for the City of New York, Kings County, in order to observe proceedings in a case. He was carrying a bicycle pump. A court officer named Robert Olinsky, identified in the complaint and the caption as Court Officer Shield # 207, refused to check the bicycle pump at the entrance to the courthouse. A sign in the courthouse lobby announced that bulky items would not be checked, but Posr claimed that the bicycle pump was not a bulky item. He also claimed that he had previously checked his pump at that same location.
 
 
 5
 Posr asked Olinsky why the pump would not be checked. Olinsky said that the decision was within Olinsky's discretion and refused to admit Posr to the courthouse while Posr was carrying the pump. Posr again asked Olinsky why the pump would not be checked, and Olinsky responded by asking Posr if he wanted to be arrested. Posr said that he did not, and he began backing toward the exit.
 
 
 6
 As Posr moved away, he said to Olinsky, "One day you're gonna get yours." Olinsky replied "Yeah, but tonight I'm gonna sleep like a baby." At that point, another court officer--Sean King, identified as Officer Shield # 6385--arrested Posr for disorderly conduct. He handcuffed Posr, searched his bag, ejected him from the courthouse, and told Posr that additional charges would be levied against him if he attempted to return to the courthouse later in the day.
 
 
 7
 Posr returned to the courthouse on June 14, 1996, to be arraigned (pro se ) on the disorderly conduct charge. He again carried his bicycle pump, and again Olinsky refused to admit him. Posr left, returned without the pump, and was permitted to enter.
 
 
 8
 Trial on the disorderly conduct charge was set for July 30, 1996. The state, however, was unprepared to proceed with its case on that date, explaining to the trial judge that the arresting officer was on "long-term sick leave" and unable to attend. The court found that delaying the trial until the arresting officer could be present would violate Posr's right to a speedy trial under New York law, and it therefore dismissed the charge.
 
 
 9
 On October 23, 1996, Posr filed the present suit in the United States District Court for the Eastern District of New York, pro se and in forma pauperis. His complaint listed forty-two causes of action. The district court (Gershon, J.) read the complaint as raising six claims, the first four of which were brought under 42 U.S.C. § 1983. They are for (1) denial of access to the courts, (2) false arrest, (3) malicious prosecution, and (4) retaliation for the exercise of rights guaranteed by the First Amendment. Posr's fifth claim alleged a conspiracy to violate his constitutional rights under 42 U.S.C. §§ 1985 and 1986. Sixth, and finally, Posr sought a declaratory judgment holding that his bicycle pump is not a bulky item for the purposes of the Brooklyn courthouse's storage policy.
 
 
 10
 On August 6, 1998, the district court dismissed Posr's complaint under Federal Rule of Civil Procedure 12(b)(1) and (6). Pursuant to Rule 12(b)(1) and the Eleventh Amendment, it dismissed so much of Posr's complaint as purported to state claims against official arms of the State of New York or against the named defendants in their official capacities. The remaining portions of the complaint were dismissed for various reasons pursuant to Rule 12(b)(6).
 
 
 11
 Posr appeals.
 
 DISCUSSION
 I. Standard of Review
 
 12
 We review a dismissal under Rule 12(b)(1) or 12(b)(6) de novo, drawing all inferences in favor of the plaintiff. See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir.1997). "[H]owever inartfully pleaded," a pro se complaint may not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (internal quotation marks omitted).
 
 II. Merits
 A. Eleventh Amendment bar
 
 13
 The portion of the complaint that seeks to state a claim against the New York State Office of Court Administration was properly dismissed. An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself. See Marbley v. Bane, 57 F.3d 224, 233 (1995). The State Office of Court Administration is an arm of the state and therefore immune.
 
 
 14
 The Eleventh Amendment also bars Posr's claims against the various named defendants in their official capacities as state officers. See Farid v. Smith, 850 F.2d 917, 921 (2d Cir.1988). The Eleventh Amendment does not, however, prevent Posr from suing those defendants in their individual capacities, see id. Accordingly, although the claims against these defendants in their official capacities were properly dismissed, the claims against them in their individual capacities require further discussion.
 
 B. Access to the courts
 
 15
 Posr claims that Olinsky and King violated his rights by denying him access to the Criminal Court building. Unfortunately for Posr, the right of access to the courts has been interpreted to belong solely to litigants or those seeking to be litigants, and a plaintiff may state a claim for denial of access only if the defendant's actions hindered the pursuit of a legal claim. See Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir.1997), cert. denied, --- U.S. ----, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998). Posr was denied access to the Kings County courthouse when he came to observe legal proceedings, not when he came to pursue a suit of his own. The district court's dismissal of this claim was therefore proper.
 
 C. False arrest
 
 16
 Officer King arrested Posr on the charge of disorderly conduct. The district court dismissed Posr's claim of false arrest on two alternative grounds, finding first that there was probable cause to arrest Posr and second that the court officers were entitled to qualified immunity.
 
 
 17
 (1) Probable cause. Under New York law, probable cause to arrest is a complete defense to a claim of false arrest. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996). Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. Thus, if in the exercise of reasonable caution, Officer King was warranted in believing that Posr had committed or was in fact committing the crime of disorderly conduct, the false arrest claim could not stand.
 
 
 18
 New York defines disorderly conduct as follows:
 
 
 19
 A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
 
 
 20
 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
 
 2. He makes unreasonable noise; or
 
 21
 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
 
 
 22
 4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
 
 
 23
 5. He obstructs vehicular or pedestrian traffic; or
 
 
 24
 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
 
 
 25
 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.
 
 
 26
 Disorderly conduct is a violation.
 
 
 27
 New York Penal Law § 240.20.
 
 
 28
 At oral argument, counsel for the defendants was unable to specify which subsection of the disorderly conduct statute it would have been reasonable to believe Posr was violating. We sympathize with counsel's difficulty in this regard: on the present undeveloped record, it is indeed hard to know.
 
 
 29
 The complaint expressly denies that Posr raised his voice or used profanity. If that claim were accurate, Posr would not have been committing a crime under subsections (2) or (3) of the statute. The events leading to his arrest did not take place in the presence of any assembly or meeting, nor is there any indication that he impeded the flow of pedestrian traffic into the building. Thus, it would not have been reasonable to believe that Posr was committing disorderly conduct under subsections (4) or (5). Subsection (6) is inapplicable because Posr acted alone, and nothing in Posr's complaint would support a belief that he created any "condition" specified in subsection (7).
 
 
 30
 The district court characterized Posr's comments to Officer Olinsky as "a threat." Were it reasonable for Officer King to believe that the plaintiff was illegally threatening Olinsky, there might well be probable cause to arrest him under subsection (1).[1] We conclude, however, that a court considering a motion to dismiss under Rule 12(b)(6) could not construe Posr's speech as creating probable cause to arrest for disorderly conduct, because there exist plausible interpretations of that speech that do not constitute proscribable threats.
 
 
 31
 According to the complaint, Posr asked why his bicycle pump would not be checked, was not given a substantive answer, repeated his question, and was then asked if he wanted to be arrested. He answered that he did not want to be arrested and began backing away, moving toward the exit. As he did so, he said to Olinsky, "One day you're gonna get yours."
 
 
 32
 The statement "One day you're gonna get yours," when spoken while in retreat and unaccompanied by any actions that would suggest a threat of immediate violence, cannot be the basis for a legitimate arrest. As the Supreme Court explained in City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." Id. at 461. Only "fighting words" directed at police officers can be criminalized, and the "fighting words" doctrine is probably "narrower [in] application in cases involving words addressed to a police officer, because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen." Id. at 462 (internal quotation marks omitted). As a result, "provocative" speech directed at police officers is " 'protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.' " Id. at 461 (quoting Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)).
 
 
 33
 Accepting Posr's allegations as pleaded, it is unlikely that his statement could be deemed "fighting words" even if spoken to a private person. Fighting words must tend to incite an immediate breach of the peace. See, e.g., NAACP v. Claiborne Hardware Co., 458 U.S. 886, 927, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982); Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). "One day you're gonna get yours" is, on its face, directed to a time other than the immediate. To be sure, meaning is dependent upon context, tone, accompanying action, and a variety of other circumstances. And we certainly do not preclude the possibility that someone could say "One day you're gonna get yours" in a way, and under particular circumstances, that might make violence seem imminent. But no such circumstances are described in Posr's complaint, and, on a motion to dismiss, a court is not permitted to embellish that complaint to the plaintiff's disadvantage. Instead, it must recognize that the statement carried several plausible meanings that would not involve a threat of violence. Thus, "one day you're gonna get yours" might have been no more than an expression of faith that Olinsky would someday be punished in a court of law or that the wheel of fate would eventually bring Olinsky to eternal justice as the plaintiff saw it. Moreover, the source of either of those hoped-for reckonings might have had nothing to do with Posr's own agency, let alone any retribution that he actually planned to undertake.
 
 
 34
 Whether Posr can prove that his statement was made in a way that did not violate the disorderly conduct statute is a question to be explored on a motion for summary judgment or, eventually, at trial. For present purposes, however, the issue is only whether it would be impossible for Posr to prove a set of facts that would entitle him to relief. It simply cannot be inferred from the complaint alone that Posr's comment to Olinsky must have been outside the protection of the First Amendment. And possible First Amendment protection means, of course, that an utterance might not have been the basis for a legitimate arrest, which in turn means that Officer King would not have been justified in believing that Posr's comment warranted arrest for disorderly conduct.
 
 
 35
 (2) Qualified immunity. Even when there is no probable cause to arrest, a police officer is nonetheless immune from a claim of false arrest "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991). The district court found that the officers' actions were objectively reasonable at the time they were taken. Once again, mindful of the procedural posture of this case, we cannot agree.
 
 
 36
 Qualified immunity under Golino and probable cause under Weyant both involve judgments about reasonableness. Qualified immunity from suit for false arrest is in part, therefore, a matter of second-order reasonableness: an officer is immune if it was reasonable for him to believe, reasonably, that the plaintiff was breaking the law. On grounds similar to those underlying our analysis of the probable cause question, we hold that it was improper for the district court to conclude, at this stage of the litigation, that it was reasonable for the officers to believe that probable cause existed. Accordingly, dismissing Posr's complaint on qualified immunity grounds was inappropriate.
 
 
 37
 Again, we must ask whether Posr could prevail if he were able to prove the set of facts alleged in his complaint. If Posr made out such facts, no officer could have reasonably believed himself to have had probable cause to arrest Posr under subsections (2) through (7) of the disorderly conduct statute. And as explained above, Posr's protection from arrest for saying "One day you're gonna get yours" would, in those circumstances, have also been a matter of clearly established constitutional law. See City of Houston, 482 U.S. at 461-62; Claiborne Hardware, 458 U.S. at 927; see also Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (stating that the defense of qualified immunity does not withstand a finding that the defendant violated a clearly established constitutional right of the plaintiff).
 
 
 38
 For these reasons, we hold that the district court erred when, on a motion brought under Rule 12(b)(6), it dismissed Posr's claim of false arrest.
 
 D. Malicious prosecution
 
 39
 To establish a claim for malicious prosecution under New York law, the plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir.1997). Counsel for the defendants contends that Posr cannot establish the second required element, because there was probable cause to arrest Posr for disorderly conduct. The defendants also argue, and the district court held, that Posr failed to make out the fourth element of the claim, i.e., favorable termination. These are the only grounds given, either by the district court or by the defendants, for dismissal of the malicious prosecution claim.
 
 
 40
 (1) Probable cause. The defendants seem to conflate probable cause to arrest with probable cause to believe that Posr could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim; the defendants urge only the former. But even if the two were interchangeable, our holding on the question of false arrest entails the rejection of the defendants' present argument about probable cause. If it was error for the district court to assume that Posr could not prove that he had been arrested without probable cause, it was also error to assume that Posr could not prove that there was no probable cause for his prosecution. Accordingly, Posr's malicious prosecution claim cannot be dismissed on probable cause grounds at this stage of the proceedings.
 
 
 41
 (2) Favorable termination. To state a claim for malicious prosecution, a plaintiff must show that his prosecution was terminated favorably to him. See id., 124 F.3d at 130. Posr's prosecution for disorderly conduct was quashed on speedy trial grounds under state law. According to the district court, a speedy trial dismissal is not a "favorable termination," because it does not address the substantive guilt or innocence of the person prosecuted.
 
 
 42
 The district court found support for this view in Singleton v. City of New York, 632 F.2d 185 (2d Cir.1980), which contains a statement that "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." Id. at 193. Singleton is, however, clearly distinguishable from the instant case. The prosecution in Singleton was terminated by an "adjournment in contemplation of dismissal," which the court analogized to a consent decree, i.e., a ruling that "involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt." Id. It was thus unlike the present situation, in which the prosecution was ended on a ground that did not require the consent of the government.[2]
 
 
 43
 Posr's case is governed not by Singleton but by our decision in Murphy v. Lynn, 118 F.3d 938 (2d Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998). In that case, we upheld a verdict for the plaintiff on a malicious prosecution claim and specifically held that dismissal on speedy trial grounds generally qualifies, under New York law, as favorable termination. See id. at 950. Murphy noted, as a general matter, that a prosecution is only deemed to terminate "in favor of the accused" for these purposes if "its final disposition is such as to indicate the innocence of the accused." Id. at 948. It specifically acknowledged that adjournment in contemplation of dismissal, as in Singleton, is not, under New York law, an outcome sufficiently favorable to the accused to allow a malicious prosecution suit. See id. at 949. But it explained that adjournment in contemplation of dismissal, as well as other kinds of terminations that would not permit malicious prosecution claims to be brought, typically terminate the criminal charges without prejudice. See id. In such cases, the possibility remains open that the government will pursue the same charges against the same defendant later on. See id. That is why such a termination carries no implications about the legitimacy of the prosecution.
 
 
 44
 When the termination is with prejudice, a different analysis prevails. Murphy explains that if the outcome "was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, ... it is not a termination in favor of the accused for purposes of a malicious prosecution claim." Id. But if the prosecution ended because of "a constitutional or other privilege ... such as the right to a speedy trial," a malicious prosecution claim is not precluded. Id. "[T]he accused should not be required to relinquish such a privilege in order to vindicate his right to be free from malicious prosecution." Id; see also id. at 949-50 (collecting New York authorities for the rule stated).
 
 
 45
 Murphy thus distinguishes the situation of Singleton and directly governs the instant case. Under the law and logic of Murphy, Posr cannot be required to waive his right to dismissal on speedy trial grounds in order to preserve the possibility of bringing a malicious prosecution suit. Accordingly, the district court erred in its determination that Posr failed to plead favorable termination.
 
 
 46
 The district court gave no other ground for barring this claim, and, as we have said, the only other reason urged by the defendants--the existence of probable cause for prosecution--is, at this stage of the proceedings, precluded for the reasons stated in our discussion of the false arrest issue. We accordingly vacate the dismissal of the plaintiff's malicious prosecution claim.
 
 E. First Amendment
 
 47
 To state a § 1983 claim for retaliation for the exercise of First Amendment rights, a plaintiff must show that his activity was protected by the First Amendment and that the defendant's conduct complained of was in response to that protected activity. See Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (1994). To survive a motion to dismiss under the second prong, the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect. See id. at 195.
 
 
 48
 The district court construed Posr's First Amendment claim as alleging that he had been arrested in retaliation for questioning Olinsky's refusal to check the bicycle pump. It then reasoned that Posr had not raised a reasonable inference of retaliatory intent, because there existed an intervening and sufficient independent ground for Posr's arrest, namely his "threat[ to] Olinsky that he was 'gonna get [his]'." The arrest, the court indicated, was in response to that threat rather than to the legitimate questioning.
 
 
 49
 All this would be true if such an independent basis for Posr's arrest did in fact exist. In reaching our conclusion on the issue of false arrest, however, we explained that Posr's statement "One day you're gonna get yours" cannot be construed, on this motion to dismiss, as a proscribable threat. See supra at ----. Posr must be afforded an opportunity to produce evidence showing that comment to have been protected speech under the First Amendment. See Houston, 482 U.S. at 461-62. Thus, if Posr was arrested because he spoke that sentence, as the district court found, the required connection between the exercise of his free speech rights and his subsequent arrest is established sufficiently to survive a Rule 12(b)(6) motion. It was, accordingly, error to dismiss Posr's claim for retaliation.[3]
 
 F. Conspiracy
 
 50
 Pursuant to 42 U.S.C. §§ 1985 and 1986, Posr alleges that he was the victim of a conspiracy to violate his rights. Such a conspiracy is actionable under § 1985 only if it involves a discriminatory animus based on race or some other invidious classification. See United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829, 834-35, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The plaintiff identifies himself as black, and he alleges in his complaint that the actions taken against him were racially motivated. The mere assertion of racial motivation, however, is not sufficient to state a conspiracy claim, see Graham v. Henderson, 89 F.3d 75, 82 (2d Cir.1996), and Posr does not allege facts sufficient to support a conclusion of race-based animus. He does not allege, for example, that the court officers who arrested him made any verbal references to his race or that they improperly treated other African-Americans in ways similar to that in which they treated him.
 
 
 51
 Posr also maintains that he was the victim of discrimination against pro se litigants, and he claims that pro se litigants are a protected class. He cites no authority for the latter proposition. But even if that contention were granted, the claim would fail, because his allegation that the defendants discriminated against him on the basis of his pro se status is as conclusory as his claim that the officers were motivated by racial animus.
 
 
 52
 Posr adds a claim under § 1986 for failure to prevent the violation of his rights. This claim cannot be sustained, because no § 1986 claim will lie where there is no valid § 1985 claim. See Gagliardi, 18 F.3d at 194.
 
 III. Declaratory judgment
 
 53
 In addition to relief on the claims discussed above, the plaintiff seeks a declaratory judgment holding that his bicycle pump is a non-bulky item for the purposes of the Kings County Criminal Courthouse's policy of securing items at the building's entrance. The district court acknowledged that Posr had asked for such a declaration, but it did not address the issue further. It is anything but clear that Posr's request for a declaratory judgment involves question of federal law. It is, therefore, possible that the district court considered this issue to be one of state law and simply declined to exercise supplemental jurisdiction over it. Such a decision is, of course, entirely proper whenever the subject of the declaratory judgment is sufficiently separate from the federal questions raised in the underlying suit. But if the district court's failure to discuss this issue further simply reflected its choice not to take jurisdiction, the court's opinion should have so stated. On remand, therefore, the district court should address the plaintiff's request for a declaratory judgment. Under the circumstances, we express no view as to whether Posr is entitled to the declaratory relief he seeks.
 
 IV. Appointment of counsel
 
 54
 Thus far, the plaintiff has pursued his claims pro se and in forma pauperis. We have determined that some of his claims are sufficiently well-pleaded to survive a motion to dismiss under Rule 12(b)(6), and we believe it advisable for him to have the assistance of counsel in the further prosecution of those claims. We therefore direct that the district court exercise its best efforts to appoint counsel to represent Posr in the proceedings on remand, if Posr requests such representation. See 28 U.S.C. § 1915(e)(1) (Supp.1996).
 
 CONCLUSION
 
 55
 The district court's dismissal of all claims brought against the New York State Office of Court Administration or against named defendants in their official capacities is hereby affirmed. The dismissals of Posr's claims for denial of access to the courts and for conspiracy under §§ 1985 and 1986 are also affirmed. The dismissals of the plaintiff's claims for false arrest, malicious prosecution, and retaliation for the exercise of First Amendment rights are vacated, and the case is remanded to the district court for further proceedings on those issues. On remand, the district court shall address the plaintiff's request for declaratory relief, and the plaintiff shall, if he wishes, have the benefit of appointed counsel as available.
 
 
 56
 Affirmed in part, vacated in part, and remanded.
 
 
 
 *
 The Honorable Charles S. Haight, Jr., Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Posr's complaint is devoid of indications that he engaged in any of the other activities (i.e., fighting, violence, or tumultuous behavior) that would have violated subsection (1)
 
 
 [2]
 Singleton also differs from the present case in that the charges in Singleton had gone to trial and resulted in a hung jury before the "adjournment in contemplation of dismissal" was entered. Singleton, 632 F.2d at 193. From the fact that the jury could not reach a decision, the court reasoned that there had been probable cause for the prosecution. See id. And if there was probable cause to prosecute, no malicious prosecution claim could have lain even if the termination of the criminal proceedings had been favorable to the plaintiff
 
 
 [3]
 We have held that Posr's false arrest, malicious prosecution, and First Amendment claims were improperly dismissed pursuant to a Rule 12(b)(6) motion. We express no view, of course, on what the proper result might be if the defendants sought dismissal of those three claims on a motion for summary judgment under Rule 56 following appropriate discovery. See Ricciuti, 124 F.3d at 127-128 (affirming a grant of summary judgment dismissing claims of false arrest and malicious prosecution when, after appropriate discovery, no reasonable jury could have found for the plaintiff)