**Stanley BULLARD and Jo Ann Bullard, Plaintiffs,**

v.

**The CITY OF NEW YORK, the New York City Police Department, New York City Police Officers Detective William Keenan, Shield # 04474, Police Officer Haldane Grice, Shield # 03864, Police Officer Nicholas Mazzilli, Shield # 2789, Detective Brian Cody, Shield # 1296, Police Officer John Bermudez, Shield # 02473, "John Doe," Nos. 1–5 whose identities are not known to Plaintiff at this time but being the police officers who arrested Plaintiff Stanley Bullard and violated his civil rights, and Detective Sergeant Christopher Robinson, Shield Number unknown, Defendants.**

**No. 01 CIV. 11613(JGK).**

United States District Court, S.D. New York.

Jan. 20, 2003.

---

**27.** Def. 56.1 St. ¶ 31.

Myron Beldock, Beldock, Levine & Hoffman LLP, Robert L. Herbst, Herbst & Greenwald, LLP, New York City, for Stanley Bullard, Jo Ann Bullard, Plaintiffs.

Catherine Mary Mirabile, Michael A. Caradozo, Corp Counsel of City of New York, Patrick J. Boyle, Thacher Proffitt & Wood, New York City, for The City of New York, The New York City Police Department, Haldane Grice, Nicholas Mazzilli, Brian Cody, John Bermudez, Defendants.

Patrick J. Boyle, Thacher Proffitt & Wood, New York City, Defendants.

## OPINION AND ORDER

KOELTL, District Judge.

Plaintiffs Stanley and Jo Ann Bullard ("Mr. and Mrs. Bullard") bring this action pursuant to 42 U.S.C. §§ 1983, 1988 against defendants the City of New York and the New York City Police Department ("NYPD"), as well as New York City police officers Detective William Keenan ("Keenan"), Officer Haldane Grice

294

("Grice"), Officer Nicholas Mazzilli ("Mazzilli"), Detective Brian Cody ("Cody"), Officer John Bermudez ("Bermudez"), Detective Sergeant Christopher Robinson ("Robinson") and five New York City police officers whose identities are unknown ("Unknown Officers 1–5") (persons collectively known as the "Individual Defendants"). The plaintiffs have sued the Individual Defendants in their personal and professional capacities. The plaintiffs allege that the defendants violated Mr. Bullard's constitutional rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983. The plaintiffs claim that three fellow tenants of their apartment building, Jill Freshman Cohen ("Cohen"), Jael–Lynn Meadow ("Meadow"), and Michael Brooks ("Brooks") conspired with the Individual Defendants to 1) abuse the process of the Bronx Criminal Court; 2) falsely arrest and maliciously prosecute plaintiff Stanley Bullard on four separate occasions between May 1999 and November 2000; 3) punish Stanley Bullard for speaking out against his arrests, prosecution, and treatment by the defendants and their co-conspirators; and 4) abuse the criminal justice system to destroy Mr. Bullard's reputation, inflict pain, suffering, and emotional distress on the plaintiffs, and to drive the plaintiffs from their apartment building and neighborhood. In addition, the plaintiffs claim that the NYPD and the City of New York breached their duty of care to Mr. Bullard by negligently hiring and failing to supervise the Individual Defendants in violation of 42 U.S.C. § 1983. Finally, the plaintiffs bring state law claims against the defendants for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, abuse of process, violations of Stanley Bullard's rights under the New York State Constitution, negligence, negligent hiring

and supervision, and loss of consortium for Jo Ann Bullard.

The defendants now move to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

I.

On a motion to dismiss, the allegations in the Second Amended Complaint ("Complaint") are accepted as true. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiffs' favor. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' present motion should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon*, 147 F.3d at 188; *Goldman*, 754 F.2d at 1065. The Court applies this standard "with particular strictness" in view of the plaintiffs' allegations of civil rights violations. *Brodeur v. City of New York*, 99 Civ. 651, 2002 WL 424688, at *2 (S.D.N.Y. Mar.18, 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991)).

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plain-

tiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.* 282 F.3d 147, 153 (2d Cir.2002); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir.1991); *Skeete v. IVF, Inc.*, 972 F.Supp. 206, 208 (S.D.N.Y.1997); *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F.Supp.2d 435, 437 (S.D.N.Y. 2001). The Court can consider additional materials on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). *See Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir.2002); *Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *aff'd on remand*, 999 F.2d 33 (2d Cir.1993); *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F.Supp.2d 527, 533–34 (S.D.N.Y.2001), *aff'd*, 283 F.3d 73 (2d Cir.2002).

For the purposes of this motion, the following facts are accepted as true.

Stanley and Jo Ann Bullard reside at 2728 Henry Hudson Parkway, Apartment 45C, Bronx, New York. (Compl.¶ 7.) Cohen, Meadow, and Brooks, none of whom are defendants in this action, lived in the same apartment building. (*Id.* at ¶ 18.) At all relevant times, the Individual Defendants were employees of the New York City Police Department and the City of New York. (*Id.* at ¶ 16.)

On or about May 26, 1999, defendants Keenan, Mazzilli, and Unknown Officers 1–3 went to the plaintiffs' apartment to investigate Brooks' allegations that Stanley Bullard had slashed three of his car tires. (*Id.* at ¶ 21.) In reporting the alleged crime, Brooks fraudulently misrepresented himself as a psychiatrist and negotiator for the United States Marshal Service although he held neither position. (*Id.* at ¶ 22.) Moreover, Brooks did not immediately report the crime but allowed a day to pass after the alleged slashing before calling the police. (*Id.* at ¶ 22.)

When the defendants questioned Stanley Bullard about Brooks' complaint, the plaintiff denied the allegations and presented "sufficient" evidence "to place in substantial doubt the credibility of [the] complainant...." (*Id.* at ¶ 23.) Nonetheless, defendant Keenan arrested Mr. Bullard for criminal mischief in the fourth degree (N.Y. Penal L. § 145.00), placed him in handcuffs, and escorted him into a police car in full view of the Bullards' neighbors. (*Id.*) The defendants did not investigate Brooks' lack of credibility at that time. (*Id.*) Not until Bullard was locked in a holding cell did defendants Robinson and Keenan review Brooks' rap sheet. (*Id.* at ¶ 24.) Information on the rap sheet showed that Brooks was neither a psychiatrist nor an employee of the United States Marshal Service and supported the plaintiff's argument that Brooks' allegations were false. (*Id.* at ¶ 24.) Nevertheless, Mr. Bullard remained in the cell for eight hours before his release; he was ultimately arraigned on the charge of criminal mischief on June 28, 1999 in the Bronx Criminal Court. (*Id.* at ¶¶ 25–26.)

Upon approval by defendant Cody, defendants Bermudez and Mazzilli arrested Mr. Bullard on January 10, 2000. (*Id.* ¶ 27.) The arrest was the result of an allegation by Jill Freshman Cohen that the plaintiff had slashed four of her tires roughly six weeks earlier, on November 21 or 22, 1999, as witnessed by Jael–Lynn Meadow. (*Id.*) Cohen also alleged that the plaintiff telephoned her on November 22, 1999 to threaten Cohen and her daughter, and that on December 17, 1999 the plain-

tiff further threatened the two and blocked them from the elevator in their apartment building. (*Id.*) Mr. Bullard and his attorney tried to stop the arrest by telling defendant Bermudez that the charges were false. (*Id.* at ¶ 28.) But despite their efforts and the allegedly suspicious lengthy delay in Cohen's complaint, the defendants completed the arrest and brought charges against the plaintiff for menacing in the second degree (N.Y. Penal L. § 120.14); endangering the welfare of a child (N.Y. Penal L. § 260.10); harassment in the first degree (N.Y. Penal L. § 240.25); and harassment in the second degree (N.Y. Penal L. § 240.26). (*Id.*) Mr. Bullard subsequently spent five hours handcuffed in a holding cell. (*Id.*) At approximately 9:00 p.m. that night Mr. Bullard witnessed Cohen walk by his cell, pump her fist in a sign of victory, and kiss defendant Bermudez on the lips as an apparent reward for Bullard's arrest. (*Id.* at ¶¶ 29, 41.) The Complaint also alleges that the other Individual Defendants' actions were motivated, in part, by a desire to further the relationship between Cohen and Bermudez. (*Id.* at ¶ 41.) After being arrested, booked, and placed in jail, Mr. Bullard was arraigned the next day in Bronx Criminal Court and released after fifteen hours in custody. (*Id.* at ¶¶ 30–31.)

On April 19, 2000 Bullard voluntarily went to the NYPD 50th Precinct in response to a phone call from defendant Grice. (*Id.* at 32.) Jael–Lynn Meadow had told the police that Mr. Bullard violated an Order of Protection on April 8, 2000 when he confronted her at their apartment building, approached her in the mail room, and prevented her from leaving. (*Id.*) Bullard denied the allegations and the Complaint points out that there was a substantial delay in lodging the complaint with the NYPD. (*Id.*) Defendants Grice and Unknown Officer 4 arrested Bullard and he was charged with criminal contempt in the first degree (N.Y. Penal L. § 215.51), and

criminal contempt in the second degree (N.Y. Penal L. § 215.50). (*Id.*) While Bullard was in custody, defendants Grice and Unknown Officer 4 admitted that they did not believe the complainant. (*Id.*) After spending roughly fourteen hours in jail in highly unsanitary conditions, Mr. Bullard was released after he was arraigned in Bronx Criminal Court on the previously cited charges. (*Id.* at ¶¶ 33–34.)

Stanley Bullard's fourth and final relevant arrest occurred on November 15, 2000. (*Id.* at ¶ 35.) The arrest came in response to an allegedly false complaint filed by Jill Freshman Cohen two weeks earlier in which she claimed that Mr. Bullard grabbed her by the throat and crotch and threatened her. (*Id.* at ¶¶ 35–36.) Defendant Mazzilli notified defendant Grice of the complaint and arrested Mr. Bullard with Unknown Officer 5 at the Bronx Criminal Courthouse. (*Id.* at ¶ 36.) The defendants eventually took Mr. Bullard to Central Booking where he was placed in a crowded cell and sexually assaulted by two cellmates. (*Id.* at ¶¶ 36–37.) Although Mr. Bullard called for help, the officer guarding the cell failed to intervene and asked Bullard, "Can't you fight?" (*Id.* at ¶ 37.) Mr. Bullard obtained a transfer to another cell and was arraigned in Bronx Criminal Court on charges of sexual abuse in the third degree (N.Y. Penal L. § 130.55); criminal contempt in the second degree (N.Y. Penal L. § 215.50); and harassment in the second degree (N.Y. Penal L. § 240.46) before being released after thirteen hours in custody. (*Id.* at ¶¶ 37–38.)

Judge Michael Sonberg of Bronx County Criminal Court presided over a non-jury trial on or about December 14, 2000 on each of the charges against Mr. Bullard. (*Id.* at ¶ 39.) The court found the plaintiff not guilty on all counts. (*Id.*)

## II.

The defendants seek to dismiss the Complaint on the ground that the plaintiffs have pleaded sufficient facts in the Complaint to establish probable cause, thus defeating Mr. Bullard's claims for false arrest and malicious prosecution.[1] A false arrest claim under 42 U.S.C. § 1983 resting on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, "is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (citations omitted). Under New York law, "a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* (citations omitted). Probable cause constitutes such justification, and therefore probable cause "is a complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994); *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir.2003); *L.B. v. Town of Chester*, 232 F.Supp.2d 227, 233 (S.D.N.Y.2002).

To sustain a § 1983 claim based on malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995); *see also Jocks*, at 136–37; *Jenkins v. City of New York*, 98 Civ. 7170, 98 Civ. 7338, 1999 WL 782509, at \*10 (S.D.N.Y. Sept. 30, 1999), *aff'd*, 216 F.3d 1072 (2d Cir.2000). To state a claim for malicious prosecution under New York State law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir.1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995)); *see also Jenkins*, 1999 WL 782509, at \*11. Thus, the existence of probable cause to commence a proceeding is also a complete bar to a claim of malicious prosecution. *See Jenkins*, 1999 WL 782509, at \*11; *see also Funnye v. Paragon Sporting Goods*, 98 Civ. 7731, 2001 WL 300740 (S.D.N.Y. Mar. 27, 2001).

Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119 (internal quotations marks omitted). The amount of evidence required to establish probable cause to arrest "need not reach the level of evidence necessary to support a conviction ... but it must constitute more than rumor, suspicion, or even a strong reason to suspect." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983) (internal cita-

---

1. The complaint has combined all of the federal claims for violation of 42 U.S.C. § 1983 against all of the defendants into the first claim. This includes the claims for false arrest arising out of four different arrests as well as the claims for malicious prosecution arising out of pursuing the charges involved in each of the arrests. The first claim also includes the other federal claims asserted under § 1983 such as alleged retaliation infringing on Mr. Bullard's freedom of speech and association, and the alleged use of excessive force. The claim also includes a conspiracy allegation. The defendants have not objected to the form of this omnibus pleading and have not even addressed some parts of the first claim such as the alleged violation of Mr. Bullard's First Amendment rights or the alleged use of excessive force. In any event, for the reasons explained below, the defendants have not presented a sufficient basis to dismiss those parts of the first claim that they have challenged.

tions and quotation marks omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. In contrast, "[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature ... the existence ... of probable cause is to be decided by the jury." *Murphy*, 118 F.3d at 947.

■ The Court of Appeals has explained that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest *absent circumstances that raise doubts as to the victim's veracity.*" *Singer*, 63 F.3d at 119 (emphasis added). "Information about criminal activity provided by a single complainant can establish probable cause when the information is sufficiently reliable and corroborated. Yet, even if bystander witnesses are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause." *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir.1994) (internal citations omitted); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997) ("Once a police officer has a reasonable basis for believing that there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Marin v. Viggiani*, 92 Civ. 3836, 1993 WL 404098, at *6 (S.D.N.Y. Oct. 5, 1993) ("[W]hen a putative victim precisely identifies the alleged perpetrator of a crime and there is independent evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator.") Probable cause can also be established by information from an eye witness

"who it seems reasonable to believe is telling the truth." *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd* 993 F.2d 1534 (2d Cir.1993) (table).

■ Taking the facts alleged in the Complaint as true, there were sufficient indications that the complainants were not reliable sources of probable cause and the defendants did nothing to investigate the allegations, corroborate them, or pursue the claims of Mr. Bullard and his lawyer that Mr. Bullard was innocent. The defendants fail to account for the myriad indicia of unreliability cited by the plaintiffs and which are presumed to be true on a motion to dismiss. For example, at the time of Mr. Bullard's first arrest he stood accused by Michael Brooks, a man who fraudulently represented himself to the arresting officers as a psychiatrist and employee of the United States Marshal Service. Although the Complaint alleges that Stanley Bullard presented facts "sufficient" to create a "substantial doubt" as to Brooks' veracity at the time of his arrest, the defendants nonetheless arrested and charged Bullard with crimes based on Brooks' allegations. Bullard's prosecution went forward even though defendants Robinson and Keenan discovered that Brooks had lied about his occupation which undermined the credibility of his allegations against Bullard.

Similarly, defendants Bermudez and Mazzilli arrested Mr. Bullard on January 10, 2000 upon a complaint by Jill Freshman Cohen regarding incidents that allegedly occurred many weeks beforehand. The lengthy delay raises questions as to the legitimacy of the complaints that the defendants apparently left unanswered. Moreover, Mr. Bullard witnessed defendant Bermudez receive an amorous kiss from Jill Freshman Cohen allegedly as a reward for Bullard's arrest, an occurrence

which casts some doubt on the credibility of Cohen's complaints and the defendants' reliance on her for probable cause.

Defendants Grice and Unknown Officer 4 arrested Mr. Bullard on April 19, 2000 after Jael–Lynn Meadow complained that Mr. Bullard had violated an Order of Protection on April 8, 2000. The Complaint alleges that the two defendants admitted that they did not believe Meadow's statement, but Mr. Bullard remained in custody for fourteen hours and went to trial on the charge. The Complaint does not detail the objective facts that led the officers to disbelieve the complainant, but the allegations that the officers themselves did not believe the complainant, coupled with the delay in the report of the offense by the complainant, casts doubt on the reliability of the complainant, particularly when coupled with the apparent absence of investigation or corroboration.

The final arrest was effected by defendant Mazzilli and Unknown Officer 5, but only after talking with officer Grice and based on a complaint by Jill Freshman Cohen. But officer Mazzilli allegedly knew that Mr. Bullard had been arrested earlier based on questionable accusations by Mr. Brooks, and also had reason to question the credibility of Jill Freshman Cohen from the information she provided for an earlier arrest. Defendant Grice, who was consulted before the arrest, also allegedly distrusted the credibility of another complainant against the defendant. The final arrest was also based on information that was about two weeks old.

The factual allegations of the plaintiffs undermine the defendants' assertion of unambiguous probable cause. *Cf. Singer,* 63 F.3d at 119 (finding that an officer had probable cause to arrest the plaintiff when presented with facts satisfying all of the elements of the crime charged).

In *Swierkiewicz,* the Supreme Court reiterated the liberal pleading standard established by Fed.R.Civ.P. 8(a), as well as its application to complaints alleging municipal liability under § 1983. *See Swierkiewicz,* 534 U.S. at 513, 122 S.Ct. 992 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coord. Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). The Second Circuit Court of Appeals has also applied this standard in cases seeking to hold individuals liable for § 1983 violations. *See, e.g., Phelps v. Kapnolas,* 308 F.3d 180, (2d Cir. 2002) (per curiam) (overturning the district court's application of a heightened pleading standard in a § 1983 action against prison officials for allegedly violating a prisoner's Eighth Amendment rights); *see also Charles W. v. Maul,* 214 F.3d 350, 357 (2d Cir.2000) (citing *Leatherman* in a case against individual defendants for the proposition that, "[A] § 1983 claim is subject only to the notice pleading requirements of Fed.R.Civ.P. 8. That is to say, all it must contain is a short and plain statement of the claim showing that the pleader is entitled to relief.") (internal quotation marks omitted). The pleadings need not assert all of the plaintiffs' evidence that the Individual Defendants lacked probable cause, but must merely allege sufficient facts to put the defendants on notice of the plaintiffs' claims and the grounds upon which they rest. *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992. The plaintiffs have clearly met this standard. The Court cannot find, in light of the allegations in the Complaint to the contrary, that as a matter of law the defendants had probable cause to arrest and prosecute Mr. Bullard in each of the four relevant instances. The defendants' motion to dismiss based on the existence of probable cause is therefore denied.

### III.

The defendants also move to dismiss the claim of municipal liability against the City of New York. In order to impose § 1983

liability upon a municipality, the plaintiffs must identify a municipal "policy" or "custom" that caused the Mr. Bullard's injury. *See Monell v. Dept. of Social Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Board of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). The plaintiff must demonstrate that the municipality was the "moving force" behind the injury alleged. *Brown,* 520 U.S. at 404, 117 S.Ct. 1382; *Monell,* 436 U.S. at 692, 98 S.Ct. 2018. The defendants do not claim that the plaintiffs failed to allege a policy or practice sufficient to hold the defendant City of New York liable under *Monell.* Instead, they move to dismiss the claim solely on the ground that the Individual Defendants had probable cause, thus defeating the claim against the City. Because the Court cannot find as a matter of law that the Individual Defendants had probable cause to arrest and prosecute Mr. Bullard, the claim of municipal liability cannot be dismissed.

### IV.

■ The defendants argue, in the alternative, that the Individual Defendants are entitled to qualified immunity for the alleged false arrests even in the absence of probable cause. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. The unlawfulness must be apparent." *McEvoy v. Spencer,* 124 F.3d 92, 97 (2 Cir.1997)

(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotation marks, ellipses, and brackets omitted)); *see also Hope v. Pelzer,* 536 U.S. 730, ——, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002); *Funnye,* 2001 WL 300740, at *8.

The right not to be arrested without probable cause is a clearly established right. *Cook v. Sheldon,* 41 F.3d 73, 78 (2d Cir.1994) ("It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause."). Nevertheless, "even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citing *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034, and *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)).

An officer has qualified immunity for the alleged false arrests "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 416 (2d Cir.1999) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991)). The Individual Defendants argue that, even if there was no probable cause, it was objectively reasonable for them to believe there was probable cause, or at the very least, reasonable officers could disagree on whether there was probable cause.

The Court must determine whether the plaintiffs could prevail if they are able to prove the facts alleged in the Complaint. *Posr,* 180 F.3d at 416; *Brodeur v. City of*

*New York,* 99 Civ. 651, 2002 WL 424688, at *3 (S.D.N.Y. Mar. 18, 2002). Based on the facts alleged in the Complaint, there are sufficient issues of fact such that the Court cannot determine at this stage of the pleadings that the Individual Defendants are entitled to qualified immunity. With respect to the first arrest, the plaintiffs allege that Mr. Bullard provided defendants Keenan, Mazzilli, and Unknown Officers 1–3 with facts sufficient to call into doubt the credibility of the complaining witness. At the time of the second arrest, defendants Bermudez and Mazzilli apparently ignored the suspicious nature of Jill Freshman Cohen's complaint which came about a month and a half after Mr. Bullard allegedly slashed her tires. When Mr. Bullard was in jail following his third arrest, defendants Grice and Unknown Officer 4 told the defendant that they did not believe the complaint lodged by Jael–Lynn Meadow, and there was also a significant delay in lodging the complaint in that incident. And finally, Jill Freshman Cohen again lodged a delayed complaint leading to Bullard's fourth arrest by defendants Mazzilli and Unknown Officer 5. As the number of suspicious complaints grew, and the same neighbors lodged repeated complaints, the reasons mounted to doubt the veracity of the complaining witnesses. Based on the allegations in the Complaint, the Court cannot determine as a matter of law that it was objectively reasonable for the officers to find probable cause or that reasonable officers could disagree on whether the probable cause test was met. *See Brodeur,* 2002 WL 424688, at *3. The defense of qualified immunity thus does not warrant dismissal of the false arrest claims at this stage of the proceedings.

## V.

The defendants contend that the plaintiffs have failed to plead sufficiently the existence of a conspiracy to violate § 1983. This argument has only limited potential impact on the complaint because conspiracy is only one theory asserted for liability under § 1983 and the Individual Defendants are charged in the very first cause of action with effectuating false arrests and malicious prosecutions of Mr. Bullard.

In any event, the defendants' argument that the plaintiffs failed to plead adequately the elements of conspiracy to violate § 1983 is unpersuasive. The Second Circuit Court of Appeals has found that to survive a motion to dismiss a claim for conspiracy to violate § 1983 a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) (finding a pro se plaintiff's allegations sufficient to support a claim of conspiracy under § 1983). The Court of Appeals has recently reiterated that standard. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002). The Court of Appeals has also stated that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed...." *Id.* at 325 (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (citations, internal quotation marks, and internal alterations omitted)).

It is questionable whether, after *Swierkiewicz,* it is necessary to set out all the elements of a claim of conspiracy to violate § 1983, as opposed to identifying the claim of conspiracy together with a sufficient indication of the parties, the general purpose of the conspiracy, and the approximate date so that the defendants have notice of what they are charged with. In

*Walker v. Thompson*, 288 F.3d 1005 (7th Cir.2002), the Court of Appeals for the Seventh Circuit recently concluded that cases including *Pangburn* and *Dwares*, which have disapproved "conclusory allegations" of conspiracy and required pleading of the elements of a conspiracy including an overt act, cannot be squared with *Swierkiewicz*. It is true that *Ciambriello* was decided after *Swierkiewicz* was decided and reiterated the need to plead the elements of a conspiracy claim including an overt act, but *Ciambriello* was fully briefed before *Swierkiewicz* was decided and the parties did not dispute in the briefs the continuing validity of Second Circuit precedent on the pleading requirements for a conspiracy. Indeed while a petition for rehearing was filed in *Ciambriello* after *Swierkiewicz* was decided, that petition was not based on *Swierkiewicz* which was not even cited to the court.

In this case it is unnecessary to determine whether *Swierkiewicz* has compromised the conspiracy pleading cases from the Second Circuit Court of Appeals, as the Court of Appeals for the Seventh Circuit has indicated, because the Complaint in this case satisfies even the traditional pleading requirements in the Second Circuit. The Complaint alleges that "[b]ecause of personal animus against plaintiffs, Cohen, Meadow and Brooks and the defendant police officers, one of whom, upon information and belief, had a romantic personal relationship with Cohen, conspired together and with each other" to deprive Mr. Bullard of specifically enumerated constitutional rights and thereby to destroy Mr. Bullard's reputation, "to inflict pain and suffering and emotional distress upon plaintiffs, and to drive them from their apartment building and neighborhood." (Compl.¶ 19.) The plaintiffs claim that the defendants "acted and conspired together in order to achieve their own personal goals, including the furtherance of the relationship between Jill Freshman

Cohen and defendant Bermudez, as well as to punish Stanley Bullard for asserting his constitutional rights." (*Id.* at ¶ 41.) The specific constitutional rights of which Mr. Bullard was deprived are enumerated. (*Id.* at ¶ 42.) The plaintiffs allege the overt acts of arrest, imprisonment, arraignment and prosecution for each of the four incidents. And the Complaint alleges that Stanley Bullard suffered "serious physical, mental and emotional injuries requiring medical and therapeutic treatment and follow-up care. He also suffered economic injuries, including loss of employment. Defendants' acts destroyed Stanley Bullard's reputation and standing in the community." (*Id.* at ¶ 40.) These allegations constitute a sufficient pleading to survive the motion to dismiss.

## CONCLUSION

For the reasons explained above, the motion to dismiss the Complaint is denied. Because the plaintiffs' federal claims have not been dismissed, the motion to dismiss the plaintiffs' pendent state law claims for lack of subject matter jurisdiction is also denied.

**SO ORDERED.**